# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-50983

United States Court of Appeals
Fifth Circuit

**FILED**
February 26, 2020

Lyle W. Cayce
Clerk

DON POWERS; KARON WERNLI,

    Plaintiffs - Appellants

v.

NORTHSIDE INDEPENDENT SCHOOL DISTRICT; BRIAN T. WOODS,

    Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas

Before HIGGINBOTHAM, STEWART, and ENGELHARDT, Circuit Judges.

KURT D. ENGELHARDT, Circuit Judge:

Plaintiffs-Appellants Don Powers and Karon Wernli filed suit against their former employer, Northside Independent School District (NISD) and its superintendent Brian Woods, asserting free speech and retaliation claims in violation of their First Amendment rights under 42 U.S.C. § 1983; Article 1, Section 8 of the Texas Constitution; and the Texas Whistleblower Act. On appeal, Plaintiffs challenge several of the district court's rulings, as well as its final judgment in favor of Defendants. We AFFIRM.

No. 18-50983

## I.

Powers and Wernli, formerly the principal and assistant principal, respectively, of Adams Hill Elementary School, were employed by NISD, pursuant to two-year term contracts that were set to expire at the end of the 2014–15 school year. During the 2012–13 school year, Plaintiffs, along with three other Adams Hill educators, served on a committee (the 504 committee) which was convened for the purpose of implementing regulations under Section 504 of the Rehabilitation Act of 1973.[1]

*Plaintiffs' Section 504 Practices*

In May 2013, the 504 committee met to conduct an evaluation of J.B., a student diagnosed with Attention Deficit Hyperactivity Disorder (ADHD). The 504 committee determined that J.B. had a reading disability and was therefore entitled to an oral administration accommodation for the upcoming STAAR test.[2] However, on June 20, 2013, Anna Draker, who was NISD's Section 504 program coordinator at the time, reviewed J.B.'s Section 504 documentation. After concluding that J.B. did not meet the criteria to qualify for oral administration on state tests, Draker notified Plaintiffs that J.B. would not be given the accommodation for the STAAR test.

Following this incident, NISD conducted an investigation of Adams Hill's Section 504 files and 2013 STAAR testing procedures. In July 2013, Draker and the NISD investigative team met with Wernli and later with Powers to inform them of potential STAAR testing errors and Section 504 violations at Adams Hill. After his meeting with NISD, Powers called the Texas Education

---

[1] Section 504 requires federally-funded school districts to "conduct an evaluation . . . of any [student] who, because of handicap, needs or is believed to need special education or related services . . . ." 34 C.F.R. § 104.35; *see also* 29 U.S.C. § 794(a).

[2] The STAAR test is a Texas standardized test used to measure students' academic performance.

No. 18-50983

Agency (TEA)[3] to validate that he and Wernli were "on the right approach for accommodations on the 504 for oral administration." The following day, Wernli also called the TEA because she "felt adamant to report . . . that [NISD] had violated the law by taking J.B.'s rights away from him." Wernli and Powers both placed several subsequent calls to the TEA to validate their Section 504 procedures and to report NISD's allegedly unlawful conduct.

Thereafter, on July 24 and July 30, 2013, respectively, NISD suspended Powers and Wernli pending the outcome of their investigation into Plaintiffs' Section 504 and STAAR administrative practices. Upon the investigation's conclusion, NISD filed an incident report with the TEA setting forth the investigative team's findings that Plaintiffs intentionally authorized inappropriate student testing accommodations based on a misapplication of Section 504 eligibility requirements.

*Administrative Proceedings*

In early September 2013, Plaintiffs filed grievances asserting that NISD imposed their suspensions in retaliation for Plaintiffs reporting NISD's conduct to the TEA. After hearing Plaintiffs' grievances, NISD's superintendent, Brian Woods, denied their requested remedies. Woods then sent Plaintiffs follow-up letters informing them that he would be recommending their termination during an upcoming meeting of the NISD Board of Trustees (the Board).[4] In advance of the upcoming termination proceeding, the Board held a hearing on Plaintiffs' grievances, after which the Board too denied Plaintiffs' requested remedies. On December 10, 2013,

---

[3] The TEA is the state agency that oversees primary and secondary public education in Texas.

[4] The Board is the body with decision-making authority over employment decisions concerning campus-level administrators.

No. 18-50983

during the Board's regular meeting, Woods recommended that Plaintiffs' employment be terminated, and the Board voted in favor of termination.

The Board's first vote to terminate entitled Plaintiffs to a hearing before an independent hearing examiner (IHE)[5] appointed by the TEA. The hearing was held before the IHE on March 18, 19, 20, and 24, 2014. Over those four days, the parties presented witnesses, offered exhibits, and cross-examined opposing witnesses. On April 14, 2014, the IHE issued his findings of fact and conclusions of law and found that NISD was justified and met the standard of good cause in proposing termination of Plaintiffs' employment contracts. At the following Board meeting on April 22, 2014, the Board adopted the IHE's recommendation and unanimously voted to terminate Plaintiffs' employment.[6]

*District Court Proceedings*

On May 22, 2014, Plaintiffs filed suit against NISD in Texas state court, alleging NISD terminated their employment in violation of the Texas Whistleblower Act. Plaintiffs later amended their state court petition to name Woods as a defendant and to raise additional causes of action under the Texas and United States Constitutions, 42 U.S.C. § 1983, the Rehabilitation Act, and the Americans with Disabilities Act. Thereafter, Defendants timely filed a notice of removal. On August 4, 2015, Plaintiffs filed their First Amended Complaint, raising the following claims against NISD: (1) violation of the Texas Whistleblower Act, TEX. GOV'T CODE § 554.002(a); (2) violation of Plaintiffs' First Amendment free speech rights under § 1983; and (3) violation

---

[5] The IHE presides over a quasi-judicial hearing, administered in accord with Texas Rules of Civil Procedure and Rules of Evidence, and makes findings of fact, conclusions of law, and a recommendation to the Board.

[6] Following their termination for good cause, Plaintiffs filed an appeal with the Texas Commissioner of Education; however, on June 10, 2014, Plaintiffs voluntarily dismissed their appeal.

4

No. 18-50983

of Plaintiffs' free speech rights under Article I, Section 8 of the Texas Constitution. In their First Amended Complaint, Plaintiffs also raised a § 1983 claim against Woods.

On October 29, 2015, the district court dismissed Plaintiffs' First Amendment retaliation claims against Woods on the basis of qualified immunity. On January 27, 2016, the district court granted in part and denied in part NISD's motion for summary judgment. The district court granted summary judgment on Plaintiffs' free speech claims under the First Amendment and the Texas Constitution.[7] However, the district court concluded that genuine issues of material fact precluded summary judgment on Plaintiffs' Texas Whistleblower claims against NISD. Consequently, only Plaintiffs' Texas Whistleblower Act claims against NISD survived for trial. On January 19, 2018, the district court also granted NISD's motion for summary judgment on its affirmative defense of Plaintiffs' failure to mitigate their economic damages under the Texas Whistleblower Act, finding that Plaintiffs had failed to identify competent evidence of their efforts to obtain substantially equivalent employment since their discharge.

Plaintiffs' remaining claims under the Texas Whistleblower Act went to a jury trial. During the trial, the district court informed the jury that the IHE's findings of fact from the administrative hearing have a preclusive effect, meaning the jury must accept those facts as true but was still tasked with determining whether retaliation was the reason for Plaintiffs' terminations. The written jury charge likewise incorporated a preclusive effect instruction as to questions three and seven of the verdict form.

---

[7] In their briefs, Plaintiffs appeal the district court's summary judgment of their free speech claims under only the First Amendment. Accordingly, any free speech claims Plaintiffs previously asserted under the Texas Constitution are deemed waived on appeal. *See Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004) (citing FED. R. APP. P. 28(a)(9)(A)).

No. 18-50983

After the close of evidence, the jury returned a unanimous verdict in favor of NISD, finding that Plaintiffs' conversations with the TEA about NISD's denial of a student's test-taking accommodations were not reports of a violation of law made in good faith. Thereafter, the district court entered judgment on the verdict in favor of Defendants. On November 20, 2018, Plaintiffs timely filed their notice of appeal.

## II.

Plaintiffs contend that the district court erred by dismissing their claims against Defendant Woods based on qualified immunity. We review *de novo* a motion to dismiss for failure to state a claim under Rule 12(b)(6), applying the same standard as the district court. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (internal quotation marks omitted). However, the plaintiff must plead "specific facts, not mere conclusory allegations" to state a claim for relief that is facially plausible. *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual allegations need not be detailed, but they must be enough to raise a right to relief above the speculative level, assuming all the allegations are true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

As superintendent, Woods is entitled to qualified immunity from suit under § 1983 unless Plaintiffs can demonstrate that Woods' actions violated clearly established constitutional law. *See Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992). Our qualified immunity determination ordinarily requires a two-step analysis: (1) whether Plaintiffs have stated a violation of their First

No. 18-50983

Amendment rights[8]; and if so, (2) whether Woods' conduct was objectively reasonable in light of clearly established law. *See Salas*, 980 F.2d at 305–06.

We need not determine whether Plaintiffs have adequately stated a First Amendment retaliation claim because even assuming Plaintiffs succeed on the first prong of our qualified immunity analysis, they fail on the second prong. *See Sims v. City of Madisonville*, 894 F.3d 632, 638 (5th Cir. 2018) (per curiam) (electing to skip the first prong of the qualified immunity analysis because the case could be resolved on the second prong). "The second prong of the qualified immunity test is better understood as two separate inquiries: whether the allegedly violated constitutional rights were *clearly established at the time of the incident*; and, if so, whether the conduct of the defendant[] was objectively unreasonable in the light of that then clearly established law." *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 326 (5th Cir. 1998). In the context of First Amendment retaliation claims, our law was previously ambiguous as to whether an individual who recommends an adverse employment decision but is not a final decision-maker can be liable for retaliation under Section 1983. *See Culbertson*, 790 F.3d at 627; *see also Sims*, 894 F.3d at 641.

In concluding that this area of the law was unsettled, the *Culbertson* court discussed the tension in our precedents' application of *Beattie v. Madison County School District*, 254 F.3d 595 (5th Cir. 2001). *Culbertson*, 790 F.3d at 625–27. In *Beattie*, a school secretary sued the principal and superintendent, among other defendants, for First Amendment retaliation after they recommended her termination to the school board, which unanimously voted to terminate her employment. 254 F.3d at 599. The *Beattie* court held that

---

[8] To state a claim for First Amendment retaliation, Plaintiffs must allege (1) they suffered an adverse employment decision; (2) their speech involved a matter of public concern; (3) their interest in speaking outweighed Woods' interest in promoting efficiency; and (4) their speech motivated Woods' conduct. *See Culbertson v. Lykos*, 790 F.3d 608, 617 (5th Cir. 2015) (citing *Kinney v. Weaver*, 367 F.3d 337, 356 (5th Cir. 2004) (en banc)).

"[b]ecause the board fired Beattie for permissible, constitutional motives independently of [the defendants'] recommendation, that superseding cause shields [the defendants] from liability." *Id.* at 605. Although the *Beattie* court did not necessarily hold that the principal and superintendent were not individually liable because they were not the final decision-makers, some later decisions "have interpreted *Beattie* to hold that only final decision-makers may be held liable for First Amendment retaliation under § 1983." *Culbertson*, 790 F.3d at 626 (citing *Johnson v. Louisiana*, 369 F.3d 826, 831 (5th Cir. 2004)); *see also Whiting v. Univ. of S. Miss.*, 451 F.3d 339, 350–51 (5th Cir. 2006) (holding that university president could not be liable for First Amendment retaliation because he was not responsible for the final decision to deny professor's tenure). Yet, such an interpretation of *Beattie* runs contrary to our earlier and controlling decision in *Jett v. Dallas Independent School District*, which required only that the plaintiff show "an affirmative causal link" between the school principal's recommendation and the school district's decision. *See Culbertson*, 790 F.3d at 626 (quoting *Jett v. Dall. Indep. Sch. Dist.*, 798 F.2d 748, 758 (5th Cir. 1986)); *see also Sims*, 894 F.3d at 641.

Because of the uncertainty created by these decisions, our law on this issue remained unsettled until 2018 when the *Sims* court provided "overdue clarification." *Sims*, 894 F.3d at 641. There, our court held that there is no absolute bar on liability for individuals who are not final decision-makers in a First Amendment retaliation claim. *Id.* The *Sims* court further held that the "causal link" standard in *Jett* controls and sets the causation requirement on such a claim. *Id.* Nevertheless, like in *Sims*, this clarification of the law provides no recourse to the plaintiffs in the instant case because the law was not clearly established at the time the incident occurred. *See id.* When Powers and Wernli were terminated in April 2014, the inconsistency in our law as to whether First Amendment liability can attach to a public official who did not

No. 18-50983

make the final employment decision had not yet been resolved. *See Culbertson*, 790 F.3d at 627 (concluding that the law remained unsettled in June 2015). Accordingly, the district court did not err in dismissing Plaintiffs' claims against Woods based on qualified immunity.

## III.

Next, Plaintiffs contend that the district court erroneously granted summary judgment on their First Amendment claims, upon concluding that Plaintiffs' complaints to the TEA regarding NISD's application of Section 504 accommodations were activities performed pursuant to Plaintiffs' official duties.

We review *de novo* a grant of summary judgment. *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015). Summary judgment is appropriate when the movant is entitled to judgment as a matter of law, and there is no genuine dispute of material fact. FED. R. CIV. P. 56(a). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010).

We "draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence." *Goudeau*, 793 F.3d at 474. "However, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (internal quotation marks and citation omitted). The party opposing summary judgment must go beyond the pleadings and identify specific evidence in the record showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The movant is entitled to summary judgment if "the nonmoving party has failed to make a sufficient showing on

an essential element of her case with respect to which she has the burden of proof." *Id.* at 323.

In reviewing a free speech claim brought by a public employee, we conduct a two-step inquiry. First, we must "determin[e] whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) (internal citation omitted). If the answer is yes, the question becomes "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Id.* The first step in that analysis "sets out two predicates for public-employee speech to receive First Amendment protection": the speech must be (1) made as a citizen and (2) on a matter of public concern. *Gibson v. Kilpatrick*, 773 F.3d 661, 667 (5th Cir. 2014).

"The 'as a citizen' requirement draws a distinction between when public employees speak in their private capacities and when they speak 'pursuant to their official duties.'" *Id.* (quoting *Garcetti*, 547 U.S. at 421). When public employees speak pursuant to their official duties, they are not speaking as citizens for First Amendment purposes, and their speech is not protected. *Id.* (citing *Garcetti*, 547 U.S. at 421). Although the Supreme Court articulated no comprehensive framework for determining whether speech is within the scope of an employee's official duties, it did state that neither job descriptions nor the fact that the speech concerns the subject matter of the employment are dispositive. *Id.* (citing *Garcetti*, 547 U.S. at 421, 424–25). The Court further advised that the proper inquiry should be practical and focused on the scope of the employee's professional duties. *Id.* (citing *Garcetti*, 547 U.S. at 424–25).

Here, Plaintiffs placed several calls with the TEA to validate their Section 504 procedures and report NISD's allegedly unlawful conduct. It is

No. 18-50983

undisputed that Plaintiffs' job duties included implementing Section 504 for students at Adam Hill.  Yet, Plaintiffs contend that their job duties did not include *reporting* NISD's alleged misconduct to a higher level authority, *e.g.* the TEA; therefore, their calls to the TEA constitute private, protected speech. We find this argument unconvincing.  Both Powers and Wernli were members of the school's committee that was tasked with implementing and ensuring compliance with Section 504.  Indeed, as members of the 504 committee, Plaintiffs participated in the meeting specifically convened to determine whether student J.B. was eligible for Section 504 accommodations.  It then follows that Plaintiffs' calls to TEA regarding Section 504 construction and application at Adams Hill were clearly "activities undertaken in the course of performing [their] job[s]," such that they were pursuant to Plaintiffs' official duties.  *See Williams v. Dall. Indep. Sch. Dist.*, 480 F.3d 689, 693–94 (5th Cir. 2007) (holding that a school athletic director's memoranda expressing concern regarding the handling of school athletic funds were not protected speech because they were "part-and-parcel of his concerns about the program he ran"). Such activities are not protected by the First Amendment; accordingly, the district court did not err in granting summary judgment on Plaintiffs' First Amendment claims.[9]

## IV.

Plaintiffs also appeal the district court's grant of summary judgment barring Plaintiffs from recovering for lost wages under the Texas Whistleblower Act.[10]  The Texas Whistleblower Act permits a successful plaintiff to receive "compensation for wages lost during the period of

---

[9] Because we conclude that Plaintiffs' speech was made pursuant to their official duties, we need not determine whether the speech was a matter of public concern.

[10] Our standard of review on a motion for summary judgment has been set forth *supra.*

11

suspension or termination." TEX. GOV'T CODE ANN. § 554.003(b)(2) (West 2019). The statute allows for recovery of back pay, as well as front pay, when job reinstatement is not feasible. *See Dall. Cty. v. Glasco*, No. 05-03-01330-CV, 2004 WL 1202008, at \*4 (Tex. App.—Dallas  June 2, 2004, no pet.) (mem. op.); *City of Hous. v. Levingston*, 221 S.W.3d 204, 232 (Tex. App.—Houston [1st Dist.] 2006, no pet.). However, a plaintiff must use reasonable diligence to mitigate damages by seeking other employment which is substantially equivalent to the job from which the plaintiff was discharged. *Office of the Attorney Gen. of Tex. v. Rodriguez*, 535 S.W.3d 54, 84 (Tex. App.—El Paso 2017, pet. granted). Employment is substantially equivalent when it "affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status" as the position from which the plaintiff has been terminated. *West v. Narbors Drilling USA, Inc.*, 330 F.3d 379, 393 (5th Cir. 2003). In a wrongful discharge case, the defendant has the burden of proving plaintiff's failure to mitigate damages. *Id.* However, if the defendant establishes that the plaintiff has not made reasonable efforts to obtain work, the defendant is not required to prove that evidence of equivalent work exists and is available. *Id.*

In the instant case, both Powers and Wernli, instead of seeking comparable employment, retired and began taking annuity payments from the Texas Teacher Retirement System after their termination. Plaintiffs contend that by doing this, they exercised reasonable care to minimize their damages. We disagree. Our court has recognized that the appropriate focus for mitigation of damages is on Plaintiffs' efforts to obtain other employment. *See Hansard v. Pepsi-Cola Metro. Bottling Co., Inc.*, 865 F.2d 1461, 1468 (5th Cir. 1989) (finding plaintiff was clearly not entitled to back pay after he stopped

looking for work).  For four years following their termination, neither Powers nor Wernli made reasonable efforts to look for work.[11]

Plaintiffs justify their lack of efforts to obtain comparable employment by contending that any efforts they could have made would have been futile. However, Plaintiffs' unilateral decision that their job-seeking efforts would be futile does not absolve them of their duty to mitigate damages.  *See Johnston v. Harris Cty. Flood Control Dist.*, 869 F.2d 1565, 1579, n.3 (5th Cir. 1989) (reversing an award of back pay where the plaintiff did not try to obtain other employment and, thus, did not fulfill his duty to exercise reasonable diligence to mitigate his damages, because he had unilaterally determined the job search would be pointless).  Because Plaintiffs have failed to exercise reasonable diligence to mitigate their damages, they are not entitled to recovery of lost wages.

Lastly on this issue, Plaintiffs contend that the district court erred in denying Plaintiffs' motion for rescission or modification, which they filed nearly seven months after the district court's order denying Plaintiffs' recovery of lost wages, after the close of discovery, and only three months before trial. Yet, a review of the record reveals that Plaintiffs' "new evidence" of their efforts seeking employment was not previously unavailable.  *See In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002); FED. R. CIV. P. 59(e).  Plaintiffs had the opportunity to raise evidence of their efforts to obtain comparable employment prior to the district court's ruling on the original motion for summary judgment.  Instead, because Plaintiffs had not made such efforts, they rested on their futility argument.  Plaintiffs cannot relitigate the issue by subsequently creating new evidence.  *Cf. Rosenzweig v. Azurix Corp.*, 332 F.3d

---

[11] In their later motion for rescission, Plaintiffs raise "changed circumstances" alleging they sought comparable employment, though notably, not until *after* the court's order denying Plaintiffs' recovery of lost wages.

No. 18-50983

854, 863 (5th Cir. 2003) ("[A] motion to alter or amend the judgment under Rule 59(e) . . . cannot be used to raise arguments which could, and should have been made before the judgment issued."). Accordingly, the district court did not err in denying Plaintiffs' motion for rescission or modification.

## V.

Plaintiffs contend the district court also erred by instructing the jury that the findings from the IHE administrative hearing had a preclusive effect. Questions three and seven of the jury charge and instructions read, in relevant part:

> In answering this question, you are also bound to consider the findings of fact and conclusions of law contained in the independent hearing examiner's recommendation of termination as true. In other words, you must take it as true that Northside ISD had good cause to terminate [the Plaintiffs'] employment contract.

Additionally, at trial, the district court explained to the jury how this preclusive effect is applied:

> The findings of fact made in [the IHE] hearing could have been appealed but [were] not; therefore, it's preclusive, a fancy word meaning it bounds everybody to exercise their legal rights. Those facts . . . you must accept on the termination, however, that does not have preclusive effect on the issue of whether or not they were . . . terminated as a result of the plaintiffs making complaint under the Whistle Blower Act . . . [y]ou will have to determine whether or not [Plaintiffs] were retaliated against and that was the reason for termination, not the findings of the state hearing officer nor the investigation of the school board and the reasons that the school board put forth for termination.

We review jury charges and instructions under the deferential abuse of discretion standard. *Bagby Elevator Co., Inc. v. Schindler Elevator Corp.*, 609 F.3d 768, 772 (5th Cir. 2010). District courts are given "wide latitude in

14

formulating jury charges." *Id.* (quoting *Carrizales v. State Farm Lloyds*, 518 F.3d 343, 348 (5th Cir. 2008)). Therefore, the challenging party has the burden of showing that "the instruction as a whole creates substantial doubt as to whether the jury was properly guided." *Id.* (quoting *Carrizales*, 518 F.3d at 348). Furthermore, even if we conclude that a jury instruction is erroneous, we will not reverse on that error if the challenged instruction could not have affected the outcome of the case.[12] *Id.* (citing *Dahlen v. Gulf Crews, Inc.*, 281 F.3d 487, 494 (5th Cir. 2002)).

In *Bradberry v. Jefferson County, Texas*, our court articulated that a Texas administrative agency's findings can have preclusive effect when "the agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." 732 F.3d 540, 549 (5th Cir. 2013). Parties can be said to have had an "adequate opportunity to litigate" if they are represented by counsel; they have the opportunity to present witness testimony and to cross-examine opposing witnesses; and the respective rules of evidence are applied. *Id.* at 550. Like in *Bradberry*, the administrative proceedings here provided the parties with an adequate opportunity to litigate: the parties, through their attorneys, presented witnesses, offered exhibits, and cross-examined opposing witnesses over four days of testimony; at the hearing, the IHE applied the Texas Rules of Evidence; and, prior to the hearing, the parties engaged in written discovery, pursuant to the Texas Rules of Civil Procedure. The district court did not err by instructing the jury that the IHE's findings were preclusive.

---

[12] This rule of law is significant to the instant case. Here, the challenged jury instruction pertains only to questions three and seven of the verdict form. The jury, however, never reached questions three and seven because they answered the preceding, dispositive questions one and five in favor of Defendant NISD. Consequently, the challenged instruction could not have affected the outcome of the case. However, even if it had, Plaintiffs' argument fails on the merits, as well.

No. 18-50983

## VI.

Finally, Plaintiffs contend the district court erred in relying upon the jury's verdict that Plaintiffs did not report a violation of law in good faith. We disagree. Our court has long held that the jury's role is to hear both sides and choose which witnesses and what evidence it believes. *Polanco v. City of Austin, Tex.*, 78 F.3d 968, 980 (5th Cir. 1996). "It is not within the province of this court to disturb a jury's finding which is supported by the record, even if this court would have been inclined to rule differently . . . ." *Id.* The district court in the instant case found that the record supported the jury's finding and was obligated to affirm the jury's verdict accordingly. *See id.* Based on the record, the jury, in weighing the testimony and evidence presented by the Plaintiffs with that of the Defendants, could have reasonably found the Defendants to be more credible and returned a verdict in the Defendants' favor.

For these reasons, Plaintiffs have failed to show that the district court committed reversible error with respect to any of the issues raised on appeal. Accordingly, the judgment of the district court is AFFIRMED.