# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 16, 2023

Lyle W. Cayce
Clerk

————————

No. 22-50854

————————

Kaylee Lartigue,

*Plaintiff—Appellant*,

*versus*

Northside Independent School District,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:19-CV-393

———————————————————————

Before Higginbotham, Smith, and Elrod, *Circuit Judges*.

Patrick E. Higginbotham, *Circuit Judge*:

Appellant Kaylee Lartigue sued the Northside Independent School District, arguing that the District failed to properly accommodate her hearing impairment as required by the Americans with Disabilities Act. The district court granted summary judgment in favor of the District, holding that Lartigue's ADA claim was barred by 20 U.S.C. § 1415(l), the "exhaustion requirement" of the Individuals with Disabilities Education Act. Finding that the district court erred in its interpretation of § 1415(l), we VACATE the summary judgment order and REMAND the case to the district court for further proceedings consistent with this opinion.

No. 22-50854

## I.

This case concerns two distinct, but linked, statutes. The first is the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.*[1] Enacted in 1975, this statute offers federal funds to the states in exchange for providing a "free appropriate public education" ("FAPE") to all children with certain physical or intellectual disabilities.[2] As the Supreme Court previously explained, "[a]n eligible child . . . acquires a 'substantive right' to such an education once a State accepts the IDEA's financial assistance."[3] The primary vehicle through which a child receives the benefits of their promised FAPE is called an "individualized education program" ("IEP").[4] An IEP is developed by a group of school officials, teachers, and parents and is a personalized plan that details the "special education and related services" necessary for the child to meet their educational goals.[5] The IDEA provides for compensatory education as a remedy, but it does *not* authorize compensatory damages as a form of relief.[6]

The second statute is the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*[7] Passed in 1990, Title II of the ADA protects the rights of *all*

---

[1] 20 U.S.C. § 1400 *et seq.*

[2] 20 U.S.C. § 1412(a)(1)(A).

[3] *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 157 (2017) (citing *Smith v. Robinson*, 468 U.S. 992, 1010 (1984)). "Compensatory education involves discretionary, prospective injunctive relief crafted by a court to remedy what might be termed an educational deficit created by an educational agency's failure over a given period of time to provide an individualized education program to a student under IDEA." *D.A. v. Houston Indep. Sch. Dist.*, 716 F. Supp. 2d 603, 613 (S.D. Tex. 2009), *aff'd sub nom. D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450 (5th Cir. 2010) (citation omitted).

[4] *Id.* at 158.

[5] *Id.*

[6] *Perez v. Sturgis Public Schools*, 598 U.S. 142, 149–50 (2023).

[7] 42 U.S.C. § 12131 *et seq.*

No. 22-50854

individuals with disabilities (not just children) by banning discrimination by public entities, including schools.[8] The ADA includes a mandate to eliminate discrimination against individuals with disabilities, and it requires the Department of Justice to promulgate regulations to implement the ADA.[9] Unlike the IDEA, the ADA authorizes "individuals to seek redress for violations of their substantive guarantees by bringing suits for injunctive relief or money damages."[10]

As these two statutes deal with the substantive rights of individuals with disabilities, there is a natural overlap in coverage. This statutory overlap has led to some confusion in the courts—namely, when is a claim more properly brought under the IDEA versus under another anti-discrimination statute, like the ADA?

The Supreme Court first tried to answer this question in the 1984 case *Smith v. Robinson*.[11] There, the Court held that the IDEA is "the *exclusive* avenue through which a plaintiff may assert an equal protection claim to a publicly financed special education."[12] In doing so, the Court determined Congress had foreclosed plaintiffs from asserting their right to a FAPE as promised under the IDEA through other statutory schemes such as Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794, and 42 U.S.C. § 1983.[13]

But *Smith* did not last long. Congress quickly responded to the *Smith* decision by adopting the Handicapped Children's Protection Act of 1986,

---

[8] *Fry*, 580 U.S. at 159–60.

[9] 20 U.S.C. § 12134.

[10] *Fry*, 580 U.S. at 160.

[11] 468 U.S. 992 (1984).

[12] *Id.* at 1009 (emphasis added).

[13] *Id.*

No. 22-50854

which "overturned *Smith*'s preclusion of non-IDEA claims while also adding a carefully defined exhaustion requirement."[14] Codified as 20 U.S.C. § 1415(l), the relevant provision of that statute reads:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, *except that* before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.[15]

The Supreme Court recently explained in *Fry v. Napoleon Community Schools* how § 1415(l)'s "exhaustion provision" works.[16] The first part of the exhaustion provision (up until "except that") re-affirms Congress's intent to not prevent plaintiffs from asserting "claims under [other anti-discrimination] laws even if, as in *Smith* itself, those claims allege the denial of an appropriate public education (much as an IDEA claim would)."[17] However, the second part of the provision (everything after "except that") imposes a limit on the "anything goes" regime.[18] It requires a plaintiff suing under the ADA or other similar laws to first exhaust IDEA's administrative procedures in certain circumstances, namely when "seeking relief that is also

---

[14] *Fry*, 580 U.S. at 161.

[15] 20 U.S.C. § 1415(l) (emphasis added).

[16] 580 U.S. 154.

[17] *Id.* at 161.

[18] *Id.*

available under" the IDEA.[19] Under *Fry*, when a lawsuit asserts a denial of a FAPE, plaintiffs comply with § 1415(l)'s exhaustion requirement by submitting their case to an IDEA hearing officer prior to suing in federal court under the ADA.[20]

As a result, especially in situations involving children with disabilities in a school setting, courts must contend with the difficult task of discerning whether a claim is based on the denial of a FAPE (an IDEA claim) or on a "failure to accommodate" argument (an ADA claim). The Supreme Court has provided some helpful guidance. *Fry* states that "[w]hat matters is the crux—or, in legal-speak, the gravamen—of the plaintiff's complaint, setting aside any attempts at artful pleading."[21] The Supreme Court instructs that this examination "should consider substance, not surface," and that a court "should attend to the diverse means and ends of the statutes covering persons with disabilities."[22]

Even if a court determined that a disability discrimination claim was based on the denial of a FAPE, that is not the end of the inquiry. In *Perez*, the Supreme Court further elaborated on the scope of § 1415(l) by answering an analogous, but different, question than the one in *Fry*—namely, "whether a suit admittedly premised on the past denial of a free and appropriate education may nonetheless proceed without exhausting IDEA's administrative processes if the remedy a plaintiff seeks is not one IDEA provides."[23] The Supreme Court concluded that a plaintiff requesting

---

[19] *Id.*

[20] *Id.* at 168; 20 U.S.C. § 1415(l).

[21] *Fry*, 580 U.S. at 169.

[22] *Id.* at 170.

[23] 598 U.S. at 149–50.

compensatory damages for an alleged ADA violation premised on a FAPE denial was not required to exhaust the IDEA's administrative processes because the relief sought (compensatory damages) was "not something IDEA can provide."[24]

Putting together the text of the IDEA, the relevant precedents (*Fry* and *Perez*), and Congress's explicit rebuke of *Smith*, the current state of the law is as follows: in a suit against a public school for alleged violations of the ADA or other similar anti-discrimination statutes, the court should first assess whether the gravamen of the complaint concerns the denial of a FAPE or, instead, is based on disability discrimination.[25] If the complaint does not concern the denial of a FAPE, then the plaintiff need not got through the IDEA's administrative hurdles.[26] On the other hand, if the complaint *is* predicated on a FAPE denial, then the court must then ask what relief is sought.[27] If the relief sought is not one that the IDEA can provide (such as compensatory damages), then, again, the plaintiff need not go through the IDEA's administrative hurdles.[28] But if the relief sought is of the type that the IDEA offers, then the plaintiff must fully exhaust the administrative processes as required by § 1415(l).[29]

## II.

Appellant Kaylee Lartigue is hearing impaired, uses a hearing aid, and requires interpretation services. From 2017 to 2019, Lartigue attended high

---

[24] *Id.* at 143.

[25] *See Fry*, 580 U.S. at 168–69.

[26] *Id.*

[27] *See Perez,* 598 U.S. at 149–50.

[28] *Id.*

[29] *Id.*

school at Northside Independent School District's ("NSID" or the "District") John Jay Science and Engineering Academy (the "Academy"), where she was the only hearing-impaired student.[30] The District recognized that Lartigue could not fully participate in the Academy's programming absent special educational services and assistive technology, and so the Academy (along with Lartigue and her parents) developed an IEP.

Lartigue argues that, throughout her years at the Academy, the District failed to properly accommodate her hearing impairment as required by her IEP. For example, Lartigue alleges that the District repeatedly failed to provide closed-captioning for films and videos shown in class. Lartigue also alleges that "the District failed to ensure that two interpreters were available at all times, such that one interpreter would be available if the other needed to take a break." Moreover, Lartigue claims that the "counseling services" she requested were out in the open hallways of the high school, thereby depriving her of the kind of confidentiality and privacy required for counseling to be effective. Lastly, Lartigue argues that the District's failure to timely provide her with a Communication Access Realtime Translation Services for a live debate competition left her unable to fully participate in the extracurricular activity. Taken together, Lartigue claims that "the District's refusals to accommodate [her] hearing impairment left her isolated from her peers and unable to meaningfully participate in various educational programs and activities." Lartigue left the Academy in March 2019 to be homeschooled.

Parents of NISD students with hearing impairments, including Lartigue's parents, originally filed a putative class action in federal court on

---

[30] As explained further below, Lartigue was the only student with a hearing impairment at the Academy, but there were students at other high schools within the District that brought similar claims against NSID.

April 15, 2019, on behalf of their minor children. The parents brought claims under the IDEA, the ADA, Section 504, § 1983, the United States and Texas Constitutions, and Chapter 21 of the Texas Human Resources Code. However, once Lartigue left NISD to begin homeschooling, her parents moved to sever their case and opt-out of the class action. The district judge granted this motion and severed Lartigue's case.

After the case was severed from the class action, and consistent with the IDEA's exhaustion requirement under § 1415(l), Lartigue and her parents filed a complaint with the Texas Education Agency on May 16, 2019, contending that the District had failed to provide a FAPE as outlined in Lartigue's IEP. Following an administrative hearing, the hearing officer concluded that the District satisfied the IDEA's requirements and provided Lartigue with a FAPE. After these administrative proceedings concluded, the district court evaluating Lartigue's claims found that she had satisfied IDEA's exhaustion requirement under § 1415(l).

Before the district court, Lartigue amended her complaint twice, revised her requested remedies, and changed the caption to sue under her name once she reached the age of majority. As amended, Lartigue alleged violations of: (1) Title II of the ADA; (2) Section 504 of the Rehabilitation Act; and (3) the United States and Texas Constitutions. Contrary to the class action suit, Lartigue did not include an IDEA claim. Furthermore, Lartigue sought compensatory damages, a form of relief not available under the IDEA.[31]

The District moved to dismiss Lartigue's case, which the district court granted in part and denied in part, leaving only Lartigue's ADA claim. The District then moved for summary judgment on Lartigue's ADA claim,

---

[31] *Perez*, 598 U.S. at 149–50.

which the court denied. After the District filed a motion for reconsideration, the parties filed supplemental briefs, and the district court held a hearing. Ultimately, the court granted the District's motion for reconsideration and dismissed Lartigue's ADA claim with prejudice. The court's September 9, 2022, order found that Lartigue did not have a standalone claim under the ADA because the gravamen of her complaint was the denial of a FAPE. On April 19, 2023, Lartigue moved for relief from the judgment under Federal Rule of Civil Procedure Rule 60(b), arguing that the district court's dismissal of Lartigue's ADA claim was a straightforward mistake of law.[32]

## III.

This Court reviews grants of summary judgment de novo.[33] This standard continues to apply on motions for reconsideration.[34]

## A.

The issue before this Court is whether the district court erred in concluding as a matter of law that a student cannot bring a standalone claim against a school district under Title II of the ADA if the "gravamen" of the complaint is a denial of a FAPE. Because the district court's order is contrary to the plain text of § 1415(l) and the Supreme Court's opinions in *Fry* and *Perez*, we find the district court committed reversible error.

The district court started off on the right path but ultimately reached the incorrect legal conclusion. First, in its initial order denying summary judgment, the district court correctly found that Lartigue had "exhausted her

---

[32] *See* FED. R. CIV. P. 60.

[33] *Pioneer Nat. Res. USA, Inc. v. Paper, Allied Indus., Chem. & Energy Workers Int'l Union Loc. 4-487*, 328 F.3d 818, 820 (5th Cir. 2003), *opinion modified on denial of reh'g sub nom.*, 338 F.3d 440 (5th Cir. 2003).

[34] *Id.*

administrative remedies" under § 1415(l) of the IDEA by pursuing her claim before a Special Education Hearing Officer for the State of Texas.[35] Second, the district court was correct to find that the gravamen of Lartigue's complaint was the denial of a FAPE. Neither of the parties dispute this finding. And third, the court properly understood that Lartigue's federal claims were not precluded by the TEA's findings because the legal standards applicable in an IDEA due process hearing and those that apply in a courtroom for a "failure to accommodate" claim under the ADA were different.[36]

---

[35] Section 1415(l) requires that "except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter." 20 U.S.C. § 1415(l). In turn, § 1415(f) establishes the protocol and elements of procedural due process that are owed whenever complaints are filed with appropriate agency. In particular, once "a complaint has been received under subsection (b)(6) or (k), the parents or the local educational agency involved in such complaint shall have an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency." 20 U.S.C. § 1415(f)(1)(A). Subsection (g) governs the right to appeal the findings and decisions rendered in a subsection (f) hearing. *Id*. 20 U.S.C. § 1415(g)(1) ("If the hearing required by subsection (f) is conducted by a local educational agency, any party aggrieved by the findings and decision rendered in such a hearing may appeal such findings and decision to *the State educational agency*.") (emphasis added).

On summary judgment, the district court evaluated whether Lartigue was required to not only pursue a subsection (f) hearing, but also to appeal any decisions to the state educational agency. Citing Tex. Admin. Code § 89.1185, the district court found that Texas law provided no avenue by which Lartigue could appeal her hearing officer's decision to the Texas Education Agency. After further determining that "nothing in subsection 1415(l) requires [Lartigue to] appeal to state or federal court as a prerequisite to administrative exhaustion," the court found she exhausted her administrative remedies.

[36] The court explained, "the legal standards applied by the hearing officer in Lartigue's [sic] due process hearing and the Court in this case are significantly different. The purpose of the due process hearing was to determine whether NISD provided an educational program reasonably calculated to enable Lartigue's [sic.] progress. Lartigue's [sic] ADA claim turns on whether NISD discriminated against her on account of her disability. That issue was not considered in the due process hearing. Therefore, the Court finds Lartigue's [sic] ADA claim is not precluded by the due process hearing and is not barred by the collateral estoppel doctrine."

However, the district court erred when it held that Lartigue did not have a standalone claim under the ADA because the gravamen of her complaint was the denial of a FAPE. Under the plain text of § 1415(l), "[n]othing in [the IDEA]" "restrict[s] or limit[s]" Lartigue's ability to assert her claim "under . . . the Americans with Disabilities Act."[37] As *Fry* explained, "the IDEA does not prevent a plaintiff from asserting claims under [other federal] laws"—including "the ADA"—"even if . . . those claims allege the denial of an appropriate public education (much as an IDEA claim would)."[38]

Under *Fry*, finding that the gravamen of an ADA complaint is the denial of a FAPE only leads to the conclusion that a plaintiff must exhaust the state's administrative remedies before filing suit in federal court.[39] Here, because the district court properly found that the gravamen of the complaint was the denial of a FAPE, Lartigue was only required to exhaust the state's administrative remedies before filing suit in the district court. And the parties agree that Lartigue did just that. The district court should have stopped there, after finding that Lartigue had met the exhaustion requirement of § 1415(l). Instead, the district court stretched the bounds of *Fry* to bar Lartigue's claim altogether.

The district court stated that while "*Fry*'s holding does not directly apply to this case . . . its reasoning does apply." Under the district court's reading of *Fry*, "[if] the gravamen of Lartigue's complaint is a denial of a FAPE, she has no stand alone [sic] ADA claim." This is an incorrect statement of the law on two fronts. First, *Fry*'s holding *does* directly apply to

---

[37] 20 U.S.C. § 1415(l).

[38] *Fry*, 580 U.S. at 161.

[39] *See id.* at 168–69.

this case; as explained above, Lartigue complied with § 1415(l)'s exhaustion requirement. Second, the district court described *Fry*'s reasoning as motivated by a concern with "plaintiffs [evading] IDEA's statutory limitations through artful pleading." Fair enough, but this concern is irrelevant here, as Lartigue evades no statutory limitations by filing her ADA complaint. The only relevant statutory limitation is § 1415(l)'s exhaustion requirement which Lartigue fulfilled. In other words, Lartigue is not attempting to "resurrect her abandoned IDEA claim" through artful pleading—in fact, her amended complaint abandons her IDEA claim—she is merely exercising her right under the ADA to pursue a failure to accommodate claim against her school district.

In any event, *Perez* forecloses the district court's interpretation of § 1415(l). "The Supreme Court's recent decision in *Perez* provides unmistakable new guidance."[40] In that case, the plaintiff's ADA claim was "admittedly premised on the [school district's] past denial of a free and appropriate education."[41] Notwithstanding that the gravamen of the plaintiff's complaint was the denial of a FAPE and that the plaintiff never exhausted the IDEA's administrative procedures, the Court allowed the plaintiff's standalone ADA claim to proceed because the relief sought (compensatory damages) was not one the IDEA provided.[42]

Similarly, in this case, it is undisputed that the gravamen of Lartigue's claim is the denial of a FAPE. Like the plaintiff in *Perez*, Lartigue seeks compensatory damages, relief which the IDEA does not provide. As such, to the extent Lartigue seeks a form of relief that that the IDEA does not offer,

---

[40] *J.W. v. Paley,* No. 21-20671, 2023 WL 5526787, at *4 (5th Cir. Aug. 28, 2023).

[41] *Perez,* 598 U.S. at 150.

[42] *Id.*

*Perez* is clear that Lartigue was *not even required* to exhaust her administrative remedies under § 1415(l) of the IDEA. Like in *Perez* then, nothing in the text of § 1415(l) or *Fry* forecloses Lartigue's ability to pursue her standalone ADA claim even when it is "admittedly premised" on the denial of a FAPE.

**B.**

The District now offers two alternative grounds for affirmance: one based on issue preclusion, and another related to damages. Neither are convincing.

First, the District argued that Lartigue's "'collateral attack' on the findings of the due process hearing officer are [sic] barred by the collateral estoppel doctrine." In other words, the District believes the state hearing officer's finding that Lartigue was not denied her FAPE precludes Lartigue's ADA claim in federal court. The district court already rejected this issue preclusion argument twice, and again the District's argument fails on appeal. As the district court correctly explained:

> The legal standards applied by the hearing officer in Lartigue's due process hearing and the Court in this case are significantly different. The purpose of the due process hearing was to determine whether NISD provided an educational program reasonably calculated to enable Lartigue's progress. Lartigue's ADA claim turns on whether NISD discriminated against her on account of her disability. That issue was not considered in the due process hearing. Therefore, the Court finds Lartigue's ADA claim is not precluded by the due process hearing and is not barred by the collateral estoppel doctrine.

*Perez*'s emphasis on "remedies" is also instructive here. In *Perez*, the plaintiff pursued his claims through the state's administrative proceedings and ultimately settled the case, thereby securing forward-looking relief in the

form of compensatory education.[43] Although the plaintiff in *Perez* obtained forward-looking relief, he was not foreclosed from bringing his ADA claim in federal court because he was seeking a different form of relief—namely, compensatory damages for the harms suffered in the past.[44] Similarly, in this case, Lartigue is seeking compensatory damages for the harms she suffered during her time at the Academy and is no longer seeking forward-looking relief. Lartigue, pursuant to *Perez*, cannot then be estopped from pursuing this claim for compensatory damages simply because she followed the procedures set out in § 1415(l).

In sum, because the issues involved are different (as explained by the district court), Congressionally mandated administrative proceedings are inherently non-preclusive (as explained by the Supreme Court), and Lartigue seeks a different form of relief (compensatory education versus compensatory damages), Appellee's issue preclusion argument does not provide valid alternative grounds to uphold the district court's grant of summary judgment.

Second, the District claims that Lartigue has no recoverable damages for her ADA claim. This argument is based on the Supreme Court's recent decision in *Cummings v. Premier Rehab Keller, P.L.L.C.*, which found that emotional distress damages are not recoverable under Section 504 of the Rehabilitation Act and under Section 1557 of the Patient Protection and Affordable Care Act, two statutes enacted under the Spending Clause.[45] The Fifth Circuit expressly declined to decide whether *Cummings* extends to claims under Title II of the ADA which, unlike Section 504 of the

---

[43] *Perez,* 598 U.S. at 145.

[44] *See id.* at 147.

[45] 142 S. Ct. 1562 (2022).

No. 22-50854

Rehabilitation Act and Section 1557 of the Affordable Care Act, is not a Spending Clause statute. Moreover, the district court specifically declined to address this damages argument, which itself counsels against this Court entertaining the argument for the first time on a motion for reconsideration. On remand, the district court may consider this issue if need be.

\* \* \* \* \*

We cannot affirm the district court's grant of summary judgment, as it would return this Circuit to the *Smith* era—an erroneous decision that would have "consequences . . . for a great many children with disabilities and their parents,"[46] and one which Congress directly abandoned by enacting § 1415(l). Because the district court's order was contrary to the text of § 1415(l) and foreclosed by the Supreme Court's pronouncements in *Fry* and *Perez*, we vacate the grant of summary judgment and remand this case to the district court for further proceedings consistent with this opinion.

---

[46] *Id.* at 146.

No. 22-50854

JERRY E. SMITH, *Circuit Judge*, dissenting:

I respectfully dissent from the majority's detailed, well-crafted opinion. We can affirm on any ground that appears in the record. I would affirm the summary judgment on a ground that the school district raised but the district court rejected: Recovery is barred by collateral estoppel.

Dismissal of Lartigue's claim is proper because the issues of fact that make up her ADA claim are the same as those in her already-decided IDEA claim. She does not get a second bite at the apple.[1] The theories of liability making up her instant ADA suit rest on questions of fact that have already been decided in the IDEA administrative hearing.

The administrative hearing officer found against Lartigue and determined that NISD did provide her with a FAPE. That is, the hearing officer determined that NISD adequately (1) provided her with closed captioning for audio-visual content, (2) ensured the availability of multiple interpreters, (3) provided private counseling, and (4) secured Communication Access Realtime Translation Services ("CARTS") for her debate activity. Lartigue never challenged the hearing officer's determinations in state or federal court. *See* 20 U.S.C. § 1415(i)(2)(A). That is a final and binding judgment. *Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 310 (5th Cir. 2020) (holding a TEA hearing officer's findings were entitled to preclusive effect); 20 U.S.C. § 1415(i)(1)(B).

Collateral estoppel applies if (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision. *Pace v. Bogalusa City Sch. Bd.*,

---

[1] "You only get one shot, do not miss your chance to blow—[t]his opportunity comes once in a lifetime, yo." Eminem, *Lose Yourself*, on 8 Mile: Music from and Inspired by the Motion Picture (2002).

403 F.3d 272, 290 (5th Cir. 2005).  To satisfy the first requirement for collateral estoppel, two things must be true:  Both (a) the facts and (b) the legal standard used to assess those facts must be the same in both proceedings.  *Id.* (quoting *Southmark Corp. v. Coopers & Lybrand*, 163 F.3d 925, 932 (5th Cir. 1999)).

The second and third requirements for collateral estoppel are easily met:  (2) The parties fully litigated Lartigue's FAPE claims in the administrative hearing, and (3) determining whether Lartigue received a FAPE was the whole point of the hearing.  Prong (a) of the first requirement is also met because the operative facts are identical between the TEA hearing and this case.

Prong (b) of the first requirement is met as well.  The district court incorrectly believed the legal standards were different because "the purpose of the [administrative] hearing was to determine whether NISD provided an educational program reasonably calculated to enable Lartigue's progress.  Lartigue's ADA claim turns on whether NISD discriminated against her on account of her disability."  That abstract distinction, by itself, is not enough to find that collateral estoppel does not apply.  In-circuit precedent confirms that it is the legal standard raised by *the theory of liability advanced* in the subsequent ADA claim that determines whether the prior FAPE denial determination has preclusive effect.  *Id.* (applying collateral estoppel to bar ADA claim premised on issues of fact resolved in prior IDEA proceeding).

In *Pace*, the plaintiff's IDEA and ADA suits both claimed that "parts of the Bogalusa High School campus [we]re inaccessible to him."  *Id.* at 291.  The prior IDEA suit determined that the high school provided plaintiff with a FAPE because it met the accessibility standards required under IDEA.  *Id.* *Pace* held that that determination was entitled to preclusive effect under the doctrine of collateral estoppel because "Pace present[ed] no argument that the accessibility standards for new construction of school buildings under the

17

ADA or § 504 [were] more demanding[2] or even different from the standards required under the 1997 amendment to the IDEA." *Id.* at 292. *Pace* thus stands for the proposition that a legal standard is "identical" for purposes of collateral estoppel when the legal standard used to determine the existence of a fact in the subsequent suit is identical to—or more demanding than—that of the prior proceeding.[3]

Here, the ADA is the more demanding standard: "To establish a claim for disability discrimination, in the education context, something more than a mere failure to provide the FAPE required by IDEA must be shown."[4] As the district court carefully explained, "all of the accommodations that Lartigue claims the School District failed to provide were in some way associated with its obligation to provide a FAPE." For Lartigue to prevail on the theories of liability advanced in her ADA claim, the district court would have to hold, implicitly, that NISD denied Lartigue a FAPE. But that would require the district court to ignore the administrative hearing officer's final determinations, which bind Lartigue. *See Powers*, 951 F.3d at 310. Consequently, collateral estoppel bars her ADA claim.

Lartigue could have pursued claims under the Rehabilitation Act or the ADA that are "predicated on other theories of liability," and those would

---

[2] In *Pace*, a "more demanding" accessibility standard would lower the bar for liability in the ADA claim relative to the IDEA claim.

[3] And that only makes common sense. Say there are three rides at an amusement park: Riders must be 4 feet tall for Rides A and B; 5 feet for Ride C. A kid who is too short for Ride A is obviously too short for Rides B and C.

[4] *Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 995 (5th Cir. 2014) (quoting *D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist.*, 629 F.3d 450, 454 (5th Cir. 2010)) (cleaned up); *see also Delano-Pyle v. Victoria Cnty.*, 302 F.3d 567, 575 (5th Cir. 2002) (requiring intentional discrimination to recover compensatory damages under Title II of the ADA).

not be "precluded by a determination that the student has been provided an IDEA FAPE." *Lance*, 743 F.3d at 993.[5]  But she did not pursue them. Instead, her theories of liability under the ADA all rely on the premise that NISD did not provide her with a FAPE.  That includes her assertion that NISD's failure to provide CARTS for her debate activity is a non-FAPE related accommodation.[6]  Not only was the CARTS accommodation "undeniably part of a student's academic experience" and thus part of her FAPE claim, but, as the district court said, she "raise[d] her CARTS request

---

[5] For example, "a peer-on-peer harassment claim is not necessarily predicated on the denial of FAPE." *Lance*, 743 F.3d at 993.

[6] Plaintiff's reply brief implies the hearing officer did not determine whether NISD adequately provided CART services for Lartigue's debate competition.  According to the brief, the hearing officer found that "Lartigue received the requisite educational benefit because she 'was still able to participate in [*other*] debate competitions and *other* extracurricular activities.'"  There's only one problem—the briefing badly misrepresents the record. Here's what the hearing officer actually said:

> The ARD Committee was not aware Student would require CART services to participate in Congress debate during the May 2018 ARD meeting.  That need arose during the fall of 2018.  The ARD Committee convened and approved CART services in November 2018 after the need arose.  Student began using the CART services in January 2019 and even participated in Congress debate competitions in the spring.  Throughout that time, Student was participating in competitions in two other forms of debate with two ASL interpreters provided by the District present.  She also participated in other extracurricular activities—including volleyball, JROTC, and she started a sign language club—with the assistance of ASL interpreters provided by the District.

> The ARD Committee adjusted Student's IEP once it knew of the need to do so.  Even if it had not, Student was still able to participate in debate competitions and other extracurricular activities without the use of CART services "to the extent required to confer educational benefit," a fact conceded by Petitioner. *See Rettig v. Kent City Sch. Dist.*, 788 F.2d 328, 332 (6th Cir. 1986).  Thus, the District fulfilled its responsibilities in regard to the debate competition specifically and extracurricular activities more generally.

in her administrative hearing—and the hearing officer found the School District's response to her request to be consistent with its FAPE obligations." In sum, all of Lartigue's ADA theories of liability depend on NISD's denying her a FAPE.

*   *   *   *   *

The district court's conclusion was correct, but its reasoning was not. Lartigue's ADA claim should be dismissed with prejudice because it is barred by collateral estoppel. Section 1415(*l*) has nothing to do with the disposition of this case.

Because this court should use an alternate ground and affirm the summary judgment, I respectfully dissent.