# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 26, 2024

Lyle W. Cayce
Clerk

No. 22-50854

———

Kaylee Lartigue,

*Plaintiff—Appellant*,

*versus*

Northside Independent School District,

*Defendant—Appellee*.

———

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:19-CV-393

———

Before Higginbotham, Smith, and Elrod, *Circuit Judges*.

Patrick E. Higginbotham, *Circuit Judge*:

Our prior panel opinion, *Lartigue v. Northside Independent School District*, 86 F.4th 689 (5th Cir. 2023), is WITHDRAWN and the following opinion is SUBSTITUTED therefor:

Appellant Kaylee Lartigue sued the Northside Independent School District in federal court, arguing that Northside failed to properly accommodate her hearing impairment as required by the Americans with Disabilities Act. The district court granted summary judgment in favor of Northside, holding that the Supreme Court's decision in *Fry v. Napoleon Community Schools*, which considered 20 U.S.C. § 1415(l), the "exhaustion

requirement" of the Individuals with Disabilities Education Act, barred Lartigue's standalone ADA claim. Finding that the district court erred in its interpretation of *Fry* and § 1415(l), we VACATE the summary judgment order and REMAND the case to the district court for further proceedings consistent with this opinion.

## I.

This controversy implicates two distinct, but linked, statutes. The first is the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.*[1] Enacted in 1975, this statute offers federal funds to the states in exchange for providing a "free appropriate public education" ("FAPE") to all children with certain physical or intellectual disabilities.[2] "An eligible child . . . acquires a 'substantive right' to such an education once a State accepts IDEA's financial assistance."[3] The primary vehicle for delivery of the benefits of the promised FAPE is an "individualized education program" ("IEP"). An IEP is a personalized plan detailing the "special education and related services" necessary for the child to meet their educational goals. Developed by the collaborative efforts of parents and school,[4] it strikes at the difficulties faced by children with disabilities in a school setting. Footed on

---

[1] 20 U.S.C. § 1400 *et seq.*

[2] 20 U.S.C. § 1412(a)(1)(A).

[3] *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 158 (2017) (citing *Smith v. Robinson*, 468 U.S. 992, 1010 (1984)). "Compensatory education involves discretionary, prospective, injunctive relief crafted by a court to remedy what might be termed an educational deficit created by an educational agency's failure over a given period of time to provide [an individualized education program] to a student." *D.A. v. Houston Indep. Sch. Dist.*, 716 F. Supp. 2d 603, 613 (S.D. Tex. 2009), *aff'd sub nom. D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450 (5th Cir. 2010) (citation omitted).

[4] *Fry*, 580 U.S. at 158.

No. 22-50854

the Spending Clause, the IDEA's remedy is compensatory education, not compensatory damages.[5]

The second statute is the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq*.[6] Footed on the 14th Amendment, Title II of the ADA protects the rights of *all* individuals with disabilities, banning discrimination by public entities, including schools.[7] Its mandate is to eliminate discrimination against individuals with disabilities, and the Department of Justice promulgates implementing regulations.[8] Unlike the IDEA, the ADA authorizes "individuals to seek redress for violations of their substantive guarantees by bringing suits for injunctive relief or money damages."[9]

As both statutes provide substantive rights to individuals with disabilities, there can be an overlap in coverage, an overlap breeding uncertainty in defining their proper domains. The Supreme Court turned to this task in *Smith v. Robinson*,[10] holding that the IDEA is "the *exclusive* avenue through which a plaintiff may assert an equal protection claim to a publicly financed special education,"[11] and that Congress had foreclosed plaintiffs from asserting their right to a FAPE as promised under the IDEA through other statutory schemes such as Section 504 of the Rehabilitation Act of 1973 ("Section 504" or the "RA"), 29 U.S.C. 794, or 42 U.S.C. § 1983.[12]

---

[5] *Luna Perez v. Sturgis Public Schools*, 598 U.S. 142, 149–50 (2023).

[6] 42 U.S.C. § 12131 *et seq.*

[7] *Fry*, 580 U.S. at 159–60.

[8] 20 U.S.C. § 12134.

[9] *Fry*, 580 U.S. at 160.

[10] 468 U.S. 992 (1984).

[11] *Id.* at 1009 (emphasis added).

[12] *Id.*

Congress quickly responded to *Smith* with the Handicapped Children's Protection Act of 1986, which "overturned *Smith*'s preclusion of non-IDEA claims while also adding a carefully defined exhaustion requirement."[13] Codified as 20 U.S.C. § 1415(l), its relevant provision reads:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, *except that* before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.[14]

Then in *Fry v. Napoleon Community Schools*, the Supreme Court explained the exhaustion provision.[15] The first part of the provision (up until "except that") re-affirms Congress's intent to allow plaintiffs to assert "claims under [other anti-discrimination] laws even if, as in *Smith* itself, those claims allege the denial of an appropriate public education (much as an IDEA claim would)."[16] However, the second part of the provision (everything after "except that") imposes a limit on the "anything goes" regime.[17] It requires a plaintiff suing under the ADA or other similar laws to first exhaust the IDEA's administrative procedures in certain circumstances,

---

[13] *Fry*, 580 U.S. at 161.

[14] 20 U.S.C. § 1415(l) (emphasis added).

[15] 580 U.S. 154 (2017).

[16] *Id.* at 161.

[17] *Id.*

namely when "seeking relief that is also available under" the IDEA.[18] Under *Fry*, in bringing a FAPE claim, plaintiffs must comply with § 1415(l)'s exhaustion requirement by submitting their case to an IDEA hearing officer prior to suing in federal court under the ADA.[19]

As a result, especially in situations involving children with disabilities in a school setting, courts are tasked with discerning whether a claim rests on the denial of a FAPE (an IDEA claim) or the "failure to accommodate" (an ADA claim) to determine whether administrative exhaustion is first required. The Supreme Court has provided helpful guidance. *Fry* explains that "[w]hat matters is the crux—or, in legal-speak, the *gravamen*—of the plaintiff's complaint, setting aside any attempts at artful pleading."[20] The Court further instructs that this examination "should consider substance, not surface," and that a court "should attend to the diverse means and ends of the statutes covering persons with disabilities."[21]

And even if a court determines that a disability discrimination claim is based on the denial of a FAPE, it is not the end of the inquiry. In *Perez*, a unanimous Supreme Court further elaborated on the scope of § 1415(l) by answering an analogous, but different, question than the one in *Fry*—namely, "whether a suit admittedly premised on the past denial of a free and appropriate education may nonetheless proceed without exhausting IDEA's administrative processes if the remedy a plaintiff seeks is not one IDEA provides."[22] The Court concluded that a plaintiff requesting compensatory

---

[18] *Id.*

[19] *Id.* at 168; 20 U.S.C. § 1415(l).

[20] *Fry*, 580 U.S. at 169 (emphasis added).

[21] *Id.* at 170.

[22] 598 U.S. at 149–50.

damages under the ADA for the denial of a FAPE was not required to exhaust the IDEA's administrative processes because the relief sought, compensatory damages, was "not something IDEA can provide."[23]

Putting together the text of the IDEA, the relevant precedent (*Fry* and *Perez*), and Congress's explicit rebuke of *Smith* in enacting § 1415(l), the current state of the law is that in a suit against a public school for alleged violations of the ADA or similar anti-discrimination statutes, the court should first assess whether the gravamen of the complaint is the denial of a FAPE or disability discrimination.[24] If the complaint is not the denial of a FAPE, the plaintiff need not clear the IDEA's administrative hurdles.[25] On the other hand, if the complaint *is* predicated on a FAPE denial, the question turns to the relief sought.[26] And if the relief sought is not one that the IDEA can provide, such as compensatory damages, the plaintiff need not exhaust the IDEA's administrative hurdles.[27] But if the relief sought is offered by the IDEA, a plaintiff must fully exhaust the administrative processes as required by § 1415(l).[28]

## II.

Appellant Kaylee Lartigue is hearing impaired, uses a hearing aid, and requires interpretation services. From 2017 to 2019, Lartigue attended high school at Northside Independent School District's ("NSID") John Jay Science and Engineering Academy (the "Academy"), where she was the

---

[23] *Id.* at 143.

[24] *See Fry*, 580 U.S. at 168–69.

[25] *Id.*

[26] *See Perez*, 598 U.S. at 149–50.

[27] *Id.*

[28] *Id.*

only hearing-impaired student.[29] Recognizing that Lartigue could not fully participate in the Academy's programming absent special educational services and assistive technology, Northside developed an IEP (with Lartigue and her parents).

Lartigue alleges that, throughout her years at the Academy, Northside failed to properly accommodate her hearing impairment as required by the ADA by failing to: (1) provide her with Communication Access Realtime Translation ("CART") services for her use during class, and during her training and participation in debate tournaments; (2) furnish copies of notes for all of her academic classes; (3) supply two interpreters for all classes and extracurricular activities in line with professional standards of care; (4) arrange Consultative AI Teacher Services; (5) provide closed-captioning services for in-class films and videos; (6) furnish AI Counseling Services in a consistent and private fashion; (7) supply group counseling, a service all other students at a regional school for the deaf were given; (8) designate a private "quiet space" to cut out multiple voices and stimuli; (9) provide an interpreter on the bus to assist her during normal school days; and (10) implement a "flashing lights" system during the school's emergency drills, leaving her unaware of a called emergency. Lartigue alleged that, as a result of these failures, she experienced panic attacks, could not participate in certain debate competitions, that she suffered alone, and that her physical and emotional state deteriorated as a result. Taken together, Lartigue claims that "[Northside's] refusals to accommodate [her] hearing impairment left her isolated from her peers and unable to meaningfully participate in various

---

[29] As explained further below, Lartigue was the only student with a hearing impairment at the Academy, but there were students at other high schools within the Northside Independent School District that brought similar claims against NSID.

educational programs and activities," forcing Lartigue to leave the Academy in March 2019 to be homeschooled.

This procedural history traverses federal and state forums. Lartigue first sought relief in federal court in 2019 as a member of a putative class action. The class alleged violations of the IDEA, the ADA, and the Rehabilitation Act of 1973. The complaint was amended several times as other members of the class settled their complaints. To be clear, this April 2019 federal suit is the same case now before us on appellate review.

On May 16, 2019, one month after seeking relief in federal court, Lartigue filed her request for a hearing before a Special Education Hearing Officer of the Texas Education Agency ("TEA"), consistent with the exhaustion requirement of § 1415(l). Lartigue alleged, as in her extant federal complaint, violations of the IDEA, the ADA, and the Rehabilitation Act of 1973, as well as violations of the United States Constitution. Northside responded, arguing at the outset of the state administrative proceedings that the Hearing Officer did not have jurisdiction over Lartigue's non-IDEA claims. The Hearing Officer agreed, and limited his ultimate Conclusions of Law to Lartigue's IDEA claim.

The state hearing was held on August 2019, and on October 14, 2019, the Texas Hearing Officer issued his decision concluding that Lartigue received the FAPE required by the IDEA, with the following relevant factual findings: (1) after the November 16, 2018 Admission, Review and Dismissal Committee meeting, Lartigue was provided and used CART services starting in January 2019; (2) the "vast majority of the time, [Lartigue had] both [ASL] interpreters"; (3) Lartigue was provided 60 minutes per year of "itinerant support" from a certified deaf education instructor; (4) Northside provided Lartigue with 45 minutes per month of counseling; and (5) Lartigue's interpreters did not accompany her on the bus, and while not a denial of her

FAPE, moving forward she should be provided with an interpreter on the bus.

Lartigue's federal suit continued and as members of the class settled their claims, she became the sole remaining plaintiff.[30] After amending her complaint twice, revising her requested remedies, and changing the caption to sue under her name once she reached the age of majority, Lartigue alleged violations of: (1) Title II of the ADA; (2) Section 504 of the Rehabilitation Act of 1973; and (3) the United States Constitution, leaving her operative complaint with only non-IDEA claims, seeking compensatory damages, a form of relief not available under the IDEA.[31]

The federal district court later dismissed Lartigue's Section 504 and constitutional claims, leaving only Lartigue's ADA claim. The district court rejected Northside's argument that, under Fifth Circuit precedent, Lartigue's ADA claim was "precluded" by the state Hearing Officer's FAPE determination under the IDEA.[32]

---

[30] In fall 2019, all members of the class but Lartigue moved to dismiss their claims as they had settled their individual claims through mediation. On the same date, Lartigue filed a motion requesting her complaint be severed from the original class action, as Lartigue was no longer attending school and therefore lacked standing to pursue the class action. Northside responded that they did not oppose the request and indicated their agreement that Lartigue could "file an amended complaint with the same cause number reflecting the changed case style with only themselves listed as Plaintiffs."

[31] *Perez*, 598 U.S. at 149–50.

[32] Northside argued that *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 289–90 (5th Cir. 2005) required that Lartigue's ADA claim was issue precluded by the Hearing Officer's findings under the IDEA. The district court disagreed, noting that it "cannot rely on the hearing officer's findings in this case because the administrative record is not before it to review," and could not "apply an issue-preclusion analysis to Lartigue's ADA claim because it has not affirmed the hearing officer's IDEA decision—nor [did] it have the opportunity to do so."

No. 22-50854

Northside then moved for summary judgment on Lartigue's ADA claim, which the court denied. After Northside filed a motion for reconsideration, the parties filed supplemental briefs, and the district court held a hearing. Ultimately, the district court granted Northside's motion for reconsideration and dismissed Lartigue's ADA claim with prejudice. It is significant that the district court's September 9, 2022 order affirmed its prior finding that that Lartigue's suit was not barred by issue preclusion. He rather found that Lartigue could not maintain a standalone ADA claim because the gravamen of her complaint was the denial of a FAPE. On April 19, 2023, Lartigue moved for relief from the judgment under Federal Rule of Civil Procedure Rule 60(b), arguing that the district court's dismissal of Lartigue's ADA claim was a straightforward mistake of law.[33] Lartigue timely appealed the district court's dismissal of her ADA claim on September 28, 2022.

## III.

The essential question before this Court is whether Lartigue's unsuccessful IDEA complaint brought before the Texas Education Agency now precludes her ADA claim in federal court, whether that be because of exhaustion, collateral estoppel, or, as the district court found, because *Fry* prohibits standalone ADA claims based on the denial of a FAPE. We find that Lartigue's ADA claim is not precluded by the proceedings before the TEA and that she may proceed with her ADA claim in federal court.

---

[33] *See* Fed. R. Civ. P. 60.

No. 22-50854

## A.

This Court reviews grants of summary judgment and motions for reconsideration de novo.[34] We first conclude that the district court correctly found Lartigue had exhausted her administrative remedies under § 1415(l) of the IDEA by pursuing her claim before the Special Education Hearing Officer. Under *Fry*, plaintiffs must generally comply with 20 U.S.C. § 1415(l)'s exhaustion requirement if the "gravamen" of their complaint is based on the denial of a FAPE.[35] The district court determined the gravamen of Lartigue's complaint was the denial of a FAPE, a finding no party disputes on appeal. Under *Fry* then, Lartigue would have been required to exhaust the state's administrative remedies before filing suit in the district court seeking relief under the IDEA. The parties agree that Lartigue exhausted these remedies.

Although Lartigue exhausted her IDEA claim, *Perez* makes clear that she was not required to do so in order to pursue her separate ADA claim.[36] In *Perez*, the plaintiff alleged he was denied a FAPE and pursued his claims through the state's administrative proceedings until he settled with the school district and secured forward-looking relief in the form of compensatory education.[37] Perez then brought suit in federal court, seeking compensatory damages for violations of the ADA. The Supreme Court allowed Perez's ADA claim to proceed, concluding that the IDEA's exhaustion requirement applied only when plaintiffs sought the same relief

---

[34] *Pioneer Nat. Res. USA, Inc. v. Paper, Allied Indus., Chem. & Energy Workers Int'l Union Loc., 4-487*, 328 F.3d 818, 820 (5th Cir. 2003), *opinion modified on denial of reh'g sub nom.*, 338 F.3d 440 (5th Cir. 2003).

[35] *Fry*, 580 U.S. at 169.

[36] *Perez*, 598 U.S. at 147–151.

[37] *Id.* at 145.

under the IDEA and the secondary anti-discrimination law.[38] Because Perez sought compensatory damages under the ADA, damages unavailable under the IDEA, the Court held he was not required to first exhaust his claim before the administrative agency.[39]

Like *Perez*, Lartigue seeks compensatory damages unavailable under the IDEA. Like *Perez*, Lartigue was not required to exhaust her claims before the administrative agency. Section 1415(l) does not bar Lartigue's suit.

## B.

The second question is whether, as Northside argues, Lartigue's unsuccessful IDEA claim precludes an ADA claim premised on the same allegedly discriminatory conduct. Northside argues that Lartigue's "'collateral attack' on the findings of the due process hearing officer are [sic] barred by the collateral estoppel doctrine." In other words, Northside asserts that the state Hearing Officer's finding that Lartigue was not denied her

---

[38] *Id.* at 147–48 ("The statute's administrative exhaustion requirement applies *only* to suits that 'see[k] relief ... also available under' IDEA. And that condition simply is not met in situations like ours, where a plaintiff brings a suit under another federal law for compensatory damages—a form of relief everyone agrees IDEA does not provide.") (alteration in original).

[39] *Id.* at 151. Nor does Texas impose an obligation for Lartigue to appeal the Hearing Officer's finding, signaling that Lartigue is not attempting to avoid any such obligation by seeking relief in federal court. As the district court noted, "Texas does not provide an aggrieved party the opportunity to appeal a hearing officer's decision to the Texas Education Agency; the decision is directly appealable by civil action in state or federal court. . . . Nothing in subsection 1415(l) requires appeal to state or federal court as a prerequisite to administrative exhaustion." As a result, "[t]he fact that Texas does not provide an opportunity to appeal a hearing officer's decision to the state education agency does not impose an additional burden on Lartigue to appeal in state or federal court. To the contrary, it simply means that she has exhausted her administrative remedies by pursuing the one opportunity for relief that the state provides, a due process hearing."

No. 22-50854

FAPE precludes Lartigue's ADA claim in federal court. The district court rejected this argument. We agree with the district court.

Under Fifth Circuit precedent, issue preclusion applies only when the following elements are met:

> (1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a part of the judgment in that earlier action.[40]

In *Pace v. Bogalusa City School Board*, this Circuit, sitting en banc, explained that the "relitigation of an issue is not precluded unless the facts *and* the legal standard used to assess them are the same in both proceedings."[41] Pace was wheelchair-bound and brought claims under the IDEA, ADA, and Section 504 of the Rehabilitation Act, alleging that his school was not accessible. After a hearing officer found that the school system provided him with a FAPE, Pace filed suit in federal court seeking damages.[42] The district court dismissed his IDEA claim and granted summary judgment in favor of the school district on his ADA and RA claims.

On appeal, Pace argued his ADA and RA claims were not precluded by the district court's dismissal of his IDEA claim because different legal standards applied to those claims than his IDEA claims.[43] This Court disagreed and thoroughly evaluated "the standards of accessibility under the IDEA on the one hand and the ADA and Section 504 on the other to

---

[40] *In re Southmark Corp.*, 163 F.3d 925, 932 (5th Cir. 1999) (citation omitted).

[41] 403 F.3d 272, 290 (5th Cir. 2005) (citing *Southmark*, 163 F.3d at 932) (emphasis added).

[42] *Id.* at 275.

[43] *Id.* at 292.

determine whether the legal standards are 'significantly different.'"[44] This review found that the IDEA, ADA, and Section 504 required schools to be constructed in accordance with the exact same architectural standards. Because the agency found the district complied with these standards when evaluating Pace's IDEA claim—and this determination was affirmed by both the appellate state agency and the district court—it necessarily also complied with the ADA and RA.[45]

*Pace* controls and it counsels that this Court must independently analyze whether the legal standards are "significantly different."[46] Review of the standards at issue here demonstrates that the legal standards are "significantly different," so that Lartigue's ADA claim is not precluded.

First, the district court determined that Lartigue's claims under the IDEA and the ADA were governed by significantly different standards, explaining that:

> The legal standards applied by the hearing officer in Lartigue's due process hearing and the Court in this case are significantly different. The purpose of the due process hearing was to determine whether NISD provided an educational program reasonably calculated to enable Lartigue's progress. Lartigue's ADA claim turns on whether NISD discriminated against her on account of her disability. That issue was not considered in the due process hearing. Therefore, the Court finds Lartigue's

---

[44] *Id.* at 290.

[45] *Id.* at 292–93 (explaining that all three statutes required buildings to be constructed in compliance with the Americans with Disabilities Accessibility Guidelines for Buildings and Facilities or the Uniform Federal Accessibility Standards).

[46] *Id.* at 290 ("Issues of fact are not 'identical' or 'the same,' and therefore not preclusive, if the legal standards governing their resolution are 'significantly different.'").

ADA claim is not precluded by the due process hearing and is not barred by the collateral estoppel doctrine.

In addition to these differences, the IDEA and ADA require different accommodations for hearing-impaired students. School districts comply with the IDEA by providing "special education and related services" including, *inter alia*, IEPs.[47] When creating IEPs, the IEP team must consider several "special factors," including the child's "language and communication needs," "opportunities for direct communications with peers and professional personnel in the child's language and communication mode," and whether "the child needs assistive technology devices and services.[48] Ultimately, the IEP should address the "special education and related services and supplementary aids and services" that will allow the student to "to advance appropriately toward attaining the annual goals," "be involved in and make progress in the general education curriculum . . . [and] to participate in extracurricular and other nonacademic activities," and "be educated and participate with other children with disabilities and nondisabled children in the activities described in this subparagraph."[49]

The ADA also requires public entities to provide auxiliary assistive devices but differs from the IDEA in two important respects.[50] First, the ADA and its accompanying regulations require entities to "give primary consideration to the requests of individuals with disabilities,"[51] an element

---

[47] 20 U.S.C.A. § 1401(9).

[48] 20 U.S.C. § 1414(d)(1)(A)(i)(II)(aa).

[49] 20 U.S.C. § 1414(d)(1)(A)(i)(IV).

[50] *See* 28 CFR § 35.104 (explaining auxiliary aids and services).

[51] 28 C.F.R. § 35.160(b)(2).

absent in the IDEA.[52] Second, the ADA requires public entities to provide equal opportunities to disabled and non-disabled individuals; the IDEA does not. For example, accommodations under the ADA must present "*an equal opportunity* to participate in, and enjoy the benefits of, a service, program, or activity of a public entity,"[53] while an IDEA IEP must only help students "advance appropriately," "make progress" in their education, and "participate" in extracurricular activities.[54] Similarly, the ADA mandates that public entities take "appropriate steps" to ensure that its communications with "applicants, participants, members of the public, and companions with disabilities are *as effective* as communications with others;" the IDEA lacks a similar mandate.[55]

When reviewing these standards, it becomes evident that a school district could establish a FAPE in compliance with the IDEA, while nevertheless engaging in discriminatory conduct under the ADA. Phrased differently, and to borrow Justice Kagan's explanation in *Fry*, the "yardstick" to measure compliance with the IDEA is the provision of a FAPE through an IEP plan.[56] The yardstick in an ADA claim is *not* adherence to an IEP plan, but instead whether the public entity "failed to make

---

[52] The dissent argues that a disabled individual's preferences need not be considered when a public entity provides an accommodation. But this is incorrect—at least as it pertains to hearing-impaired individuals like Lartigue, ADA regulations require public entities to "give primary consideration to the requests of individuals with disabilities" when determining what "auxiliary aids and services are necessary." 28 C.F.R. 35.160(b)(2).

[53] 28 C.F.R. §35.160(b)(1).

[54] 20 U.S.C. § 1414(d)(1)(A)(i)(IV).

[55] 28 C.F.R. § 35.160(a)(1).

[56] *Fry*, 580 U.S. at 167.

reasonable accommodations," specifically, accommodations that give a disabled student *equal* access as her non-disabled peers.[57]

This is why Northside's argument that a finding that a FAPE was provided precludes an ADA violation is without merit, an argument already refuted by this Court in *Estate of Lance v. Lewisville Independent School District*.[58] In *Lance*, this Court explicitly held that "even if plaintiffs conceded that the School District fully satisfied its IDEA obligations . . . they could [still] pursue claims under the ADA and the § 504 on the grounds that the student was [prevented] from receiving a state benefit . . . provided to her non-disabled peers."[59]

The dissent cites to cases presenting issues of Article III standing and employment discrimination, but neither case has purchase here. First, the Court in *E.T. v. Paxton* held that a group of students did not have Article III standing to sue the Attorney General for his prohibition on mask mandates, correctly noting that there is no "legally protected interest in equality *simpliciter*," and instead that the ADA protects "access by way of reasonable accommodations."[60] However, there is no issue of standing here. Under *Pace*, when conducting an issue preclusion analysis, we ask whether the legal standards are significantly different. Second, in *Riel v. Elec. Data Sys. Corp.*, an employment discrimination case, we held that the ADA is different from racial discrimination statutes, as it "shifts away from similar treatment to

---

[57] *Pickett v. Texas Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1032 (5th Cir. 2022).

[58] 743 F.3d 982, 993 (5th Cir. 2014)

[59] *Id.* (cleaned up) (citations omitted).

[60] 41 F.4th 709, 717, 721 (5th Cir. 2022).

different treatment of the disabled by accommodating their disabilities."[61] Of course, children with disabilities receive different treatment, that is the point of an "accommodation." Instead, what matters under the ADA is whether a child was discriminated against because of her disability.

The Hearing Officer made no findings regarding Lartigue's ADA claim and did not consider whether Northside complied with its obligations under that statute. This buttresses the conclusion that the legal standards applied at the state hearing and in the federal case are different. We hold that the legal standards under the IDEA and the ADA in this context are significantly different, barring application of issue preclusion to Lartigue's federal ADA claim.

Not only do the legal standards differ, not surprisingly the factual findings do as well. Again, "[t]he distinguishing feature of the doctrine of collateral estoppel is that it precludes in a second or subsequent suit the relitigation of *fact issues actually determined* in a prior suit."[62] The Hearing Officer's decision here failed to address, account for, or resolve several of Lartigue's factual allegations in her operative complaint. These factual allegations are central to her claim for relief under the ADA, and as such, preclusion cannot apply to factual findings that were never actually litigated.

For example, Lartigue alleges that Northside did not provide CART services for her use during class. The Hearing Officer's findings do not speak to this allegation. Lartigue also claims that she was denied CART services during the Fall 2018 debate tournament season—the Hearing Officer

---

[61] 99 F.3d 678, 681 (5th Cir. 1996). In addition, Lartigue brings an ADA claim under Title II, while *Riel* was decided under Title I of the ADA.

[62] *James Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d 451, 459 (5th Cir. 1971) (emphasis added).

admitted to this failure. Lartigue asserts that she was not furnished with notes for all of her academic classes. The Hearing Officer's determinations do not mention these requests for class notes. Lartigue alleges that Northside failed to arrange for AI Counseling Services in a consistent and private fashion. The Hearing Officer made no determination with respect to Lartigue's request for periodic counseling in private, nor the harm she could have suffered by having to sign in public about private matters. Lartigue additionally alleges Northside did not provide closed-captioning services for in-class films and videos. The Hearing Officer is silent on this point as well. Lartigue alleges she was denied a "quiet space," although the Hearing Officer falls quiet as to these allegations.  Lastly, Lartigue alleged that Northside failed to implement a "flashing lights" system during the school's emergency drills, and again the Hearing Officer made no factual findings on this issue. Taken together, the factual issues before the IDEA Hearing Officer are not those before the district court. The issues were significantly different. Issue preclusion cannot apply.

The dissent's discussion of "ultimate facts" obscures the nature of the state agency determinations to which the dissent would give preclusive effect.  The dissent would preclude Lartigue's ADA claim (a claim we remind the Hearing Officer refused to consider) because, for example, the Hearing Officer determined that "[NISD] provided [Lartigue] with a FAPE within the meaning of the IDEA," in so doing applying *different* facts to evaluate a *different* claim under a *different* statute.  Issue preclusion is meant to "prevent repetitious litigation of what is essentially the same dispute."[63] The dissent's discussion of "ultimate facts" assumes its own premise that the dispute here is essentially the same.  But as already discussed, we see it differently.  And,

---

[63] Restatement (Second) of Judgments, § 27 cmt. c (Am. L. Inst. 2023).

of course, we must also account for the interest in not "depriv[ing] a litigant of an adequate day in court."[64]

Because Lartigue's IDEA claim depended on a different legal standard than her ADA claim and was resolved without addressing key factual allegations in her complaint, her IDEA claim is significantly different than her ADA claim and she is not collaterally estopped from proceeding. We affirm the district court's conclusions that Lartigue exhausted her claims and was not precluded from proceeding on her ADA claim, abiding by our decision in *Pace*.

## C.

However, we cannot affirm the district court's conclusion that Lartigue could not proceed with her standalone ADA claim. The district court dismissed Lartigue's ADA claim out of concern that she was "evad[ing] IDEA's statutory limitations through artful pleading." Interpreting *Fry*'s "gravamen" of the complaint test, the district court concluded that *Fry* prohibited standalone ADA claims so long as the "the gravamen of Lartigue's complaint is denial of a FAPE."

This was error. *Fry*'s "gravamen" of the complaint test speaks only to §1415(l)'s exhaustion requirement and does not prohibit standalone ADA claims, as evidenced by *Perez*.[65] This Court has recognized viable, standalone ADA claims notwithstanding the presence of a FAPE.[66] This is because

---

[64] *Id.*

[65] *Perez,* 598 U.S. at 149–50; *Lance*, 743 F.3d at 993 ("'[E]ven if plaintiffs conceded that [the School District] fully satisfied its IDEA obligations . . . they could pursue claims under the ADA and the [§ 504] on the grounds that [the student] was precluded from receiving a state benefit . . . provided to her non-disabled peers.'") (citing, *inter alia*, *Ellenberg v. N.M. Military Inst.*, 478 F.3d 1262, 1281–82 (10th Cir. 2007)).

[66] *See Lance*, 743 F.3d at 993 (citing, *inter alia, Ellenberg*, 478 F.3d at 1281–82).

compliance under the IDEA is distinct from discriminatory behavior under the ADA.

In sum, issue preclusion is inappropriate because, as in *Pace*, the IDEA's relevant legal standards are significantly different from those of the ADA and Lartigue's ADA claim raises factual issues not reviewed or decided in her administrative proceedings. Lartigue is not precluded from bringing her ADA claim.

## D.

Finally, Northside claims that Lartigue has no recoverable damages for her ADA claim, pointing to *Cummings v. Premier Rehab Keller, P.L.L.C.*, which found that emotional distress damages are not recoverable under Section 504 of the Rehabilitation Act and under Section 1557 of the Patient Protection and Affordable Care Act, two statutes enacted under the Spending Clause.[67] We have previously expressly declined to decide whether *Cummings* extends to claims under Title II of the ADA which, unlike Section 504 of the Rehabilitation Act and Section 1557 of the Affordable Care Act, is not a Spending Clause statute. And that the district court specifically declined to address this argument counsels against entertaining the argument for the first time on a motion for reconsideration. On remand, the district court may consider this issue if need be.

\* \* \* \* \*

Holding as the dissent would, that Lartigue cannot obtain compensatory damages under the ADA because Northside is meeting its forward-looking obligations under the IDEA, discharges Northside's duties under the ADA without any judicial review. To the extent that the approved

---

[67] 142 S. Ct. 1562 (2022).

FAPE resolves deficits outlawed by the ADA, a school need not be concerned going forward. But to conclude that the FAPE not only resolved Northside's future exposure to an IDEA claim but also to an ADA claim erases the injury it inflicted by its potential violation of the ADA. Recall, again, that this litigation was commenced in federal court, at all times Lartigue maintained her ADA claim, and the state hearing officer was fully aware of her ADA claim and disclaimed jurisdiction over it.

We cannot affirm the able district court's grant of summary judgment, as it would return this Circuit to the *Smith* era—with "consequences . . . for a great many children with disabilities and their parents,"[68] and one which Congress directly abandoned by enacting § 1415(l). With respect, as we see it, the district court's order was contrary to the text of § 1415(l) and foreclosed by the Supreme Court in *Fry* and *Perez*. We VACATE the grant of summary judgment and REMAND this case to the district court for further proceedings consistent with this opinion.

---

[68] *Perez*, 598 U.S. at 146.

No. 22-50854

JERRY E. SMITH, *Circuit Judge*, dissenting:

The panel majority has issued a revised opinion. It is well crafted, but, although more detailed, it is nonetheless erroneous. I again respectfully dissent.

We can affirm on any ground that appears in the record. I would affirm the summary judgment on a ground that the school district raised but the district court rejected: Recovery is barred by collateral estoppel.

Lartigue's claim must be dismissed because the issues of fact that make up her ADA claim are the same as those in her already-decided IDEA claim. She does not get a second bite at the apple.[1] The theories of liability making up her instant ADA suit rest on questions of fact that have already been decided in the IDEA administrative hearing.

The administrative hearing officer found against Lartigue and determined that NISD did provide her with a FAPE. That is, the hearing officer determined, *inter alia*, that NISD adequately (1) provided her with closed captioning for audio-visual content, (2) ensured the availability of multiple interpreters, (3) provided private counseling, and (4) secured Communication Access Realtime Translation Services ("CARTS") for her debate activity. Lartigue never challenged the hearing officer's determinations in state or federal court. *See* 20 U.S.C. § 1415(i)(2)(A). That is a final and binding judgment.[2]

Collateral estoppel applies if (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision. *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005). To satisfy prong (1), two things must be true: Both (a) the facts and (b) the legal standard used to assess those facts must be the same in both proceedings. *Id.* (quoting *Southmark Corp. v. Coopers & Lybrand*, 163 F.3d 925, 932 (5th Cir. 1999)).

The second and third requirements for collateral estoppel are easily met: (2) The

---

[1] "You only get one shot, do not miss your chance to blow—[t]his opportunity comes once in a lifetime, yo." Eminem, *Lose Yourself*, on 8 Mile: Music from and Inspired by the Motion Picture (2002).

[2] *Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 310 (5th Cir. 2020) (holding that a TEA hearing officer's findings were entitled to preclusive effect); 20 U.S.C. § 1415(i)(1)(B).

parties fully litigated Lartigue's FAPE claims in the administrative hearing, and (3) the whole point of the hearing was to determine whether Lartigue had received a FAPE. Prong (1)(a) is also satisfied because the operative facts are identical between the TEA hearing and this case.

Prong (1)(b) is met as well. The district court incorrectly believed the legal standards were different because "the purpose of the [administrative] hearing was to determine whether NISD provided an educational program reasonably calculated to enable Lartigue's progress. Lartigue's ADA claim turns on whether NISD discriminated against her on account of her disability."

That abstract distinction, by itself, is not enough to say that collateral estoppel does not apply. In-circuit precedent confirms that it is the legal standard raised by *the theory of liability advanced* in the subsequent ADA claim that determines whether the prior FAPE denial determination has preclusive effect. *Id.* (applying collateral estoppel to bar ADA claim premised on issues of fact resolved in prior IDEA proceeding).

In *Pace*, the plaintiff's IDEA and ADA suits both claimed that "parts of the Bogalusa High School campus [we]re inaccessible to him." *Id.* at 291. The prior IDEA suit had determined that the high school had provided plaintiff with a FAPE because it met the accessibility standards required under IDEA. *Id.* That determination, *Pace* held, was entitled to preclusive effect under the doctrine of collateral estoppel because "Pace present[ed] no argument that the accessibility standards for new construction of school buildings under the ADA or § 504 [were] more demanding[3] or even different from the standards required under the 1997 amendment to the IDEA." *Id.* at 292.

The upshot is unavoidable: *Pace*—by which we are bound—holds that a legal standard is "identical" for purposes of collateral estoppel when the legal standard used to determine the existence of a fact in the subsequent suit is identical to—or more demanding

---

[3] In *Pace*, a "more demanding" accessibility standard would lower the threshold for liability in the ADA claim relative to the IDEA claim.

than—that of the prior proceeding.[4]

Here, the ADA is the more demanding standard.  In the education context, liability under title II requires "a showing of *intentional* discrimination."[5]  It is not enough merely to show that a school denied a reasonable accommodation that would have provided a disabled student with meaningful access.  Accordingly, there is no title II violation so long as school officials "exercise professional judgment in such a way as not to depart grossly from accepted standards among educational professionals."  *D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist.*, 629 F.3d 450, 454 (5th Cir. 2010) (cleaned up).  That is why "something more than a mere failure to provide the FAPE required by IDEA must be shown" in order "[t]o establish a claim for disability discrimination[] in the education context."[6]

As the district court carefully explained, "all of the accommodations that Lartigue claims the School District failed to provide were in some way associated with its obligation to provide a FAPE."  For Lartigue to prevail on the theories of liability advanced in her ADA claim, the district court would have to hold, implicitly, that NISD denied Lartigue a FAPE.  But that would require that court to ignore the administrative hearing officer's final determinations, which bind Lartigue.  *See Powers*, 951 F.3d at 310.  Consequently, collateral estoppel bars her ADA claims.

Lartigue could have pursued claims under the Rehabilitation Act or the ADA that are "predicated on other theories of liability," and those would not be "precluded by a determination that the student has been provided an IDEA FAPE."  *Lance*, 743 F.3d

---

[4] And that only makes common sense.  Say there are three rides at an amusement park:  Riders must be 4 feet tall for Rides A and B; 5 feet for Ride C.  A kid who is too short for Ride A is obviously too short for Rides B and C.

[5] *J.W. v. Paley*, 81 F.4th 440, 449 (5th Cir. 2023) (emphasis added), *petition for cert. filed*, No. 23-931, 2024 U.S. S. Ct. Briefs LEXIS 736 (Feb. 21, 2024).

[6] *Est. of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 995 (5th Cir. 2014) (quoting *D.A.*, 629 F.3d at 454) (cleaned up); *see also Delano-Pyle v. Victoria Cnty.*, 302 F.3d 567, 575 (5th Cir. 2002) (requiring intentional discrimination to recover compensatory damages under title II of the ADA).

at 993.[7] But she did not advance those claims. Instead, her theories of liability under the ADA all rely on the premise that NISD did not provide her with a FAPE. Her entire case must therefore be dismissed.

Nonetheless, the majority stubbornly insists that collateral estoppel cannot apply because "Lartigue's claims under the IDEA and ADA [a]re governed by significantly different standards." Op. at 14; *see id.* at 14–18. Relying exclusively on two ADA regulations addressing communications accommodations, the majority asserts that the ADA requires schools to provide "accommodations that give a disabled student *equal* access as her non-disabled peers," whereas the IDEA merely requires adequate access. Op. at 17.

The majority's interpretation of the ADA is fundamentally flawed. Worse still, it is squarely foreclosed by our circuit's precedent. Per *E.T. v. Paxton*, 41 F.4th 709 (5th Cir. 2022), "[n]either the ADA nor Section 504 creates a legally protected interest in equality *simpliciter*. Rather, those statutes legally protect reasonable access to covered facilities and benefits . . . by way of reasonable accommodations," *id.* at 717. Indeed, that reasonable-accommodation requirement is precisely what "sets [the ADA] apart from most other anti-discrimination legislation . . . [which] mandate equality of treatment." *Riel v. Elec. Data Sys. Corp.*, 99 F.3d 678, 681 (5th Cir. 1996) (Higginbotham, J.).

An accommodation is reasonable if it "give[s] meaningful access to [a] benefit," *E.T.*, 41 F.4th at 717 (cleaned up), without "fundamentally alter[ing] the nature of th[at benefit]."[8] Accordingly, under the ADA, "[t]he appropriate accommodation need not be the [disabled individual's] preferred accommodation." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 469 (5th Cir. 2021) (Higginbotham, J.) (citation and internal quotation marks omitted).

---

[7] For example, "a peer-on-peer harassment claim is not necessarily predicated on the denial of FAPE." *Lance*, 743 F.3d at 993.

[8] 28 C.F.R. § 35.130(b)(7)(i); *see also Windham v. Harris Cnty.*, 875 F.3d 229, 235 n.6 (explaining that "reasonable modification" is equivalent to "reasonable accommodation" (citations omitted)).

So, even in the context of state and local public entities generally,[9] all the ADA protects is meaningful access. Similarly, the "IDEA aims to provide an adequate educational opportunity." *D.A.*, 629 F.3d at 454 (citations omitted). Such a "[m]inor variation[] in the application of what is in essence the same legal standard do[es] not defeat preclusion." *Smith v. Bayer Corp.*, 564 U.S. 299, 312 n.9 (2011). The majority doth protest too much, methinks.[10]

In a last-ditch attempt to insulate its plainly deficient reasoning, the majority posits that even if collateral estoppel theoretically could apply, it doesn't here. It painstakingly attempts to identify facts not expressly discussed in the hearing officer's opinion. To no avail. The futility of that endeavor should have been obvious from the start, given that Lartigue's counsel stated at oral argument that "we are fully prepared to admit that the gravamen of our ADA complaint is the denial of a FAPE."

And futile it was, for it only highlights the majority's overly simplistic understanding of the doctrine. The majority thinks that collateral estoppel cannot apply if there exists any fact not expressly mentioned in the hearing officer's opinion.

Wrong. The doctrine is not strictly limited to discrete evidentiary facts.[11] Collateral estoppel extends much further, foreclosing relitigation on issues "of evidentiary fact, of 'ultimate fact' (i.e., the application of law to fact), [and] of law." RESTATEMENT (SECOND) OF JUDGMENTS, § 27 cmt. c (AM. L. INST. 2023). The majority, by focusing exclusively on discrete evidentiary facts, ends up getting schooled on ultimate facts.

What was the point of the administrative proceeding? To resolve Lartigue's claim that NISD violated the IDEA by failing to provide her with FAPE-related accommodations. In concluding that NISD satisfied its IDEA obligations, the hearing officer made three determinations of ultimate fact:

---

[9] The ADA's threshold for liability is *even higher* in the education context, further proving that collateral estoppel bars Lartigue's ADA claims. *See supra* notes 5–6 and accompanying text.

[10] WILLIAM SHAKESPEARE, HAMLET act III, sc. 2, l. 215.

[11] After all, collateral estoppel is the doctrine of *issue* preclusion—not fact preclusion.

- "[NISD] provided [Lartigue] with a FAPE within the meaning of the IDEA." ROA.553 (citations omitted).
- Lartigue's "placement was her [Least Restrictive Environment]." *Id.* (citation omitted).
- Lartigue "had an opportunity to participate in extracurricular activities, including debate, to the extent appropriate with the use of supplementary aids and services." *Id.* (citation omitted).

All three determinations are "conclusive in a subsequent action between the parties, whether on the same or a different claim." Restatement (Second) of Judgments § 27 (Am. L. Inst. 2023). And those determinations are fatal, for Lartigue's ADA claims all rely on the premise that NISD did not provide her with a FAPE.

That alone proves that collateral estoppel applies to Lartigue's ADA claims. So we need not join the majority in perusing every last word of the hearing officer's opinion, for that would be a waste of time. Whether the hearing officer discussed one particular fact or another is of no moment. That Lartigue "litigate[d] an issue of ultimate fact and suffered an adverse determination" ends the matter. Restatement (Second) of Judgments § 27 cmt. c (Am. L. Inst. 2023). Even if the majority can show that the Third Amended Complaint pleads new evidentiary facts not expressly discussed in the hearing officer's opinion, Lartigue is still barred from "obtain[ing] a different determination of [those] ultimate facts." *Id.* Those determinations bind Lartigue, and there's nothing she can do about it.

Class dismissed.

\* \* \* \* \*

The district court's conclusion was correct, but its reasoning was not. Lartigue's ADA claim should be dismissed with prejudice because it is barred by collateral estoppel. Section 1415(*l*) has nothing to do with the disposition of this case.

Because this court should use an alternate ground and affirm the summary judgment, I respectfully dissent—again.