*Derek S. v. Ballston Spa Cent. Sch. Dist.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of December, two thousand twenty-five.

PRESENT:
> DENNY CHIN,
> RICHARD J. SULLIVAN,
> MARIA ARAÚJO KAHN,
> > *Circuit Judges*.

_____

DEREK S. and ASHLEY T.S., individually and as Guardians *Ad Litem* of their minor child, J.S.,

> *Plaintiffs-Appellants*,

v.                                                      25-668

THE BALLSTON SPA CENTRAL SCHOOL DISTRICT, BALLSTON SPA BOARD OF

EDUCATION,

*Defendants-Appellees.**

_____

**For Plaintiffs-Appellants:**                    CARLO A.C. DE OLIVEIRA, Cooper
                                                  Erving & Savage, LLP, Albany,
                                                  NY.

**For Defendants-Appellees:**                     SCOTT P. QUESNEL, Girvin &
                                                  Ferlazzo, P.C., Albany, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (Anne M. Nardacci, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the March 6, 2025 judgment of the district court is **AFFIRMED**.

Derek S. and Ashley T.S., the parents of an autistic child ("J.S."), appeal from the district court's order denying their motion for a preliminary injunction. That motion sought to compel their school district and local board of education (the "School") to provide J.S. with Applied Behavior Analysis ("ABA"), which is a form of therapy that aids early cognitive and behavioral development. Plaintiffs initially sued the School for compensatory damages under Title II of the

_____

* The Clerk of Court is respectfully directed to amend the caption as set forth above.

2

Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12101 *et seq.*, and section 504 of the Rehabilitation Act of 1973, 42 U.S.C. § 794. They later moved for a preliminary injunction, which the district court denied because Plaintiffs had failed to exhaust the administrative remedies required by the Individuals with Disabilities Education Act (the "IDEA"). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as needed to explain our decision.[1]

"[A] district court's decision to grant or deny a preliminary injunction is generally reviewed for abuse of discretion." *Zervos v. Verizon N. Y., Inc.*, 252 F.3d 163, 166 (2d Cir. 2001). As relevant here, "[a] district court abuses . . . the discretion accorded to it when . . . its decision rests on an error of law (such as application of the wrong legal principle)." *Id.* at 169 (internal quotation marks omitted); *see also JTH Tax, LLC v. Agnant*, 62 F.4th 658, 666 (2d Cir. 2023).

To determine whether the district court erred, we must first sketch the relationship between the several statutes at issue. The first of these are Title II of the ADA and section 504 of the Rehabilitation Act – the general

---

[1] We have appellate jurisdiction pursuant to 28 U.S.C. § 1292(a)(1), which vests courts of appeals with "jurisdiction of appeals from . . . [i]nterlocutory orders of the district courts . . . refusing . . . injunctions." *See Frutiger v. Hamilton Cent. Sch. Dist.*, 928 F.2d 68, 71 (2d Cir. 1991) (noting that denial of a "motion for a preliminary injunction . . . is appealable under 28 U.S.C. § 1292(a)(1)").

"antidiscrimination laws" applicable to disability claims, *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 159 (2017), that Plaintiffs invoked in their complaint. While "Title II forbids any 'public entity' from discriminating based on disability[,] section 504 applies the same prohibition to any federally funded 'program or activity.'" *Id.* (quoting 42 U.S.C. §§ 12131–32; 29 U.S.C. § 794(a)). Both statutes – which we "consider . . . together" because their "standards . . . are nearly identical" – require a plaintiff to "demonstrate that . . . he was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant because of his disability." *McElwee v. County of Orange*, 700 F.3d 635, 640 (2d Cir. 2012).

Title II and section 504 sometimes run parallel to the IDEA, which is more narrowly "designed to 'ensure that all children with disabilities have available to them a free appropriate public education [a "FAPE"] that emphasizes special education and related services designed to meet their unique needs.'" *A.R. v. Conn. State Bd. of Educ.*, 5 F.4th 155, 157 (2d Cir. 2021) (quoting 20 U.S.C. § 1400(d)(1)(A)). A FAPE must include both "'instruction' tailored to meet a child's 'unique needs'" and "sufficient 'supportive services' to permit the child to benefit from that instruction." *Fry*, 580 U.S. at 158 (quoting 20 U.S.C. § 1401(26),

4

(29)). Schools implement FAPEs through so-called "individualized education program[s]" ("IEPs"), which are "personalized plan[s]" that school officials, teachers, and parents use to track students' progress, articulate goals, and come up with strategies to help achieve those goals. *Id.* at 158–59 (citing 20 U.S.C. § 1414(d)).

In the event that New York parents object to an IEP's proposed plan, they must first seek relief from neutral state officials. *See* 20 U.S.C. §1415(f), (g), (i); *accord* N.Y. Educ. Law § 4404(1)(a), (2). It is only after they have exhausted this administrative remedy that they may demand judicial review. *See* 20 U.S.C. §§ 1415(g), (i); *accord* N.Y. Educ. Law § 4404(3)(a). This requirement comes directly from the IDEA, which mandates "that any available administrative remedies be exhausted before a lawsuit is filed in federal court." *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 530 (2d Cir. 2020) (citing 20 U.S.C. § 1415(i)(2)(A)).

The same rule applies to ADA and Rehabilitation Act claims that overlap with the IDEA. Section 1415(*l*) of the IDEA provides that "a plaintiff bringing suit under the ADA, the Rehabilitation Act, or similar laws must in certain circumstances – that is, when 'seeking relief that is also available under' the IDEA – first exhaust the IDEA's administrative procedures." *Fry*, 580 U.S. at 161

5

(quoting 20 U.S.C. § 1415(*l*)). All in all, this lattice of statutes (and acronyms) leaves us with a single issue: whether we should treat Plaintiffs' request for ABA therapy as a claim for educational supportive services "that [are] also available under [the IDEA]," 20 U.S.C. § 1415(*l*), or as a "standalone discrimination claim[]," Reply Br. at 2.

To answer that question, we must determine "whether a lawsuit seeks relief for the denial of a FAPE." *Fry*, 580 U.S. at 168. If so, "[P]laintiff[s] cannot escape [section] 1415(*l*) merely by bringing [their] suit under a statute other than the IDEA." *Id.* But "[t]he [IDEA's] administrative exhaustion requirement applies *only* to suits that 'see[k] relief . . . also available under' the IDEA." *Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 147 (2023) (quoting 20 U.S.C. § 1415(*l*)). Where plaintiffs are seeking a "remedy . . . [that the] IDEA cannot supply," such as compensatory damages, *id.* at 147, then section 1415(*l*) will not stand in their way.

Here, Plaintiffs indisputably failed to exhaust their administrative remedies even though they seek relief – implementing ABA therapy as part of J.S.'s educational routine – that the IDEA can supply.[2] They nevertheless contend that

---

[2] In their complaint, Plaintiffs focus on compensatory damages, which are not available under the IDEA. For this reason, the district court correctly separated Plaintiffs' damages claim – which remains live – from its motion for injunctive relief, which, as discussed below, cannot clear section

they are not barred by section 1415(*l*)'s exhaustion requirement because they are not challenging the denial of a FAPE. Plaintiffs insist that their complaint focuses on general disability discrimination, and that it alleges violations of the ADA and Rehabilitation Act, not the IDEA. But section 1415(*l*)'s very "premise is that the plaintiff is suing under a statute *other than* the IDEA, like the Rehabilitation Act" and "a 'magic words' approach would make [its] exhaustion rule too easy to bypass." *Fry*, 580 U.S. at 170. Instead of deferring to the "particular labels and terms" used in a complaint and the "artful pleading" of plaintiffs, courts "look to the substance, or gravamen, of the plaintiff's complaint" to determine whether it is asserting the denial of a FAPE. *Id.* at 169, 165.

Applying that approach here, we agree with the district court that Plaintiffs are indeed challenging the School's FAPE determination. Plaintiffs contend that their complaint survives this substantive analysis because ABA therapy is "not an educational service," but is instead an "accommodation[]" under the ADA and Rehabilitation Act. Reply Br. at 4. Recognizing the potential "overlap in coverage" of the three statutes at issue here, the Supreme Court has listed "clue[s]" that can

1415(*l*)'s exhaustion bar. *See* Sp. App'x at 21; *Doe v. Franklin Square Union Free Sch. Dist.*, 100 F.4th 86, 102 n.9 (2d Cir. 2024) (citing *Luna Perez*, 598 U.S. at 150).

guide courts when assessing "whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination." *Fry*, 580 U.S. at 171. These clues "come from asking a pair of hypothetical questions": (1) "could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school – say, a public theater or library?"; and (2) "could an *adult* at the school – say, an employee or visitor – have pressed essentially the same grievance?" *Id.* "[W]hen the answer [to those questions] is no, then the complaint probably does concern a FAPE . . . for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim." *Id.*

Here, Plaintiffs seek a "structured ABA program" with a "1:1 aide" to "help J.S. make progress" while he is in school. App'x at 60. But *adults* visiting the school could not have complained of the lack of such a program for themselves; nor could Plaintiffs have expected such support from a library or theater. Indeed, the only reason that Plaintiffs *could* plausibly expect such services from the School is that their complaint clearly concerns J.S.'s educational needs. It follows that Plaintiffs

are seeking IDEA-style relief and that they must exhaust their administrative remedies under section 1415(*l*).

Finally, Plaintiffs argue that the Fifth Circuit's decision in *Lartigue v. Northside Independent School District*, 100 F.4th 510 (5th. Cir. 2024), "distinguishes claims under the IDEA for denial of FAPE . . . from an ADA claim for failure to provide reasonable accommodation to a disabled student necessary for him to access education." Pls. Br. at 6. But *Lartigue* turned on the *second* prong of the two-part test described above; as the Fifth Circuit explained, "[t]he district court determined the gravamen of Lartigue's complaint was the denial of a FAPE, a finding no party disputes on appeal." *Lartigue*, 100 F.4th at 518. The court nevertheless found that "Lartigue was not required to exhaust her claims before the administrative agency" because she "s[ought] compensatory damages unavailable under the IDEA." *Id.* at 519. *Lartigue* thus accords with the district court's order here, which explained that only "the requested preliminary injunction [was] barred," and that "the claims . . . [that] seek only compensatory damages not provided for in the IDEA[] remain live." Sp. App'x at 21.

To be clear, J.S. might urgently need ABA therapy. But the way to get that relief is to follow the well-worn path of the IDEA – which enlists specialized

9

officials who are "experienced in addressing exactly the issues [J.S.] raises," *Fry*, 580 U.S. at 168 – not by seeking damages in an ADA and Rehabilitation Act suit, waiting seven months, and then tacking on a motion for an injunction that would entangle a federal district court in delicate and difficult decisions regarding the education of a disabled child.

We have considered Plaintiffs' remaining arguments and conclude that they are without merit.  Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court.